## Pennsylvania Railroad Co. *versus* White.

1. Negligence is always a question for the jury, when there is reasonable doubt as to the facts, or as to the inferences to be drawn from them. Where the measure of duty is ordinary and reasonable care and the degree of care varies according to circumstances, the question of negligence is necessarily for the jury.

2. W. took passage on a local train, for "Penn Valley." After leaving the first station east of his destination, the brakeman, as was the custom of the road, announced "The next station will be Penn Valley." Shortly after the train slowed up and stopped opposite a platform and station-house marked "Penn Valley Station." W. stepped off the car on the left side, for the purpose of crossing the track to reach the platform, and was struck by a passing express train and instantly killed. It appeared that the train had stopped in compliance with a rule of the company, that the local trains should give the preference to express trains at stations, and that the regular platform for local passengers to alight was on the right and some distance beyond where the train had stopped. *Held*, that the question of contributory negligence was properly submitted to the jury.

3. The rule, that it is the duty of a person about to cross a railroad track to stop, look and listen, is not always applicable to passengers leaving a train and crossing the track, to reach the depot at the point of destination.

January 13th 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Woodward, Trunkey and Sterrett, JJ.

Error to the Court of Common Pleas, No. 4, of *Philadelphia county*: Of January Term 1878, No. 138.

Case by Phoebe White and her children, the widow and children

of John W. White, against the Pennsylvania Railroad Company, to recover damages for the death of said John W. White, which it was alleged was caused by the negligence of the defendant.

At the trial, it appeared that the deceased and a companion took passage on a local train of defendant, at Trenton, on the 17th of April 1876, to go to Penn Valley, for the purpose of hunting. After leaving the first station east of their destination, the brakeman, in pursuance of a custom or regulation of the company, announced that the next station would be Penn Valley. Shortly thereafter the train "slowed up" and stopped in front of a platform and station-house, on which was painted over the door "Penn Valley Station." This platform and station-house were on the left side of the road, and in order to reach them it was necessary to cross the other track. As soon as the cars stopped the deceased, somewhat encumbered with his dog and gun, started from the car on the left side with the purpose of crossing the track and reaching the platform. As he alighted from the car the east bound express train for New York came along, at a rapid rate of speed, and struck and instantly killed him. It also appeared that on the opposite, or right side of the track, a short distance westerly from the point of accident, there was another platform, which was intended for way-passengers, and where they were regularly received and discharged. It did not appear, however, that White knew of this platform or that the train had stopped before reaching the regular platform, which it was required to do by the regulations of the company, in order to give the express train a clear track at that point.

The court (Elcock, J.) charged, inter alia, as follows :—

[" The question here is, which of the two parties to this controversy was negligent—that is, whether Mr. White, the decedent (and the father and husband of the plaintiffs), or the Pennsylvania Railroad Company, by its agents or servants, on this particular occasion ?]

" There does not appear to be much contest in the evidence as to what produced the death. Mr. White got upon the train at Trenton, bound for Penn Valley. At the next station north of Penn Valley the announcement was made by the agent on the train that the next station would be Penn Valley.

" Under the rules of the company defendants, a local train was bound to give way to the fast express, which was approaching on the other track, and the local train was not allowed to arrive at the station if the express was approaching, and the fast train was not allowed to pass the station if the local train had arrived at it.

" The accident occurred by reason of the train stopping at a particular point, and Mr. White getting off and crossing the track upon which the express train was running, and which struck and killed him, in the manner detailed by the witnesses.

" A passenger on a railroad train is bound to observe all the rea-

[Pennsylvania Railroad Co. *v.* White.]

sonable rules and regulations of the company, which are for his care and protection. He is obliged to keep his seat until he arrives at the station, and get off on the platform provided; and he is bound to use due care in leaving the train.

" The company are bound to provide good cars, competent conductors, a good roadway, and good platforms upon which he can be landed.

" If the proximate cause of the injury complained of resulted from a non-compliance with any of these rules by either party, the act would be negligence in the party so acting.

" If the passenger or traveller is guilty of negligence he cannot recover.

" If both parties are negligent, the plaintiff cannot recover, because the law does not stop to inquire, in such cases, the degree of negligence.

" The main question is, whether the decedent was guilty of negligence in attempting to land or leave the train at the point and in the manner which he did. Ordinarily, it would be negligence in a man attempting to leave a train and cross a track, unless he had stopped, looked and listened for an approaching train. It has been very truly said, that this rule of law originated and was applied to cases where people travelled with teams, &c., on highways which crossed railroads at grade, and where common prudence would forbid any one to cross without what has been determined ordinary caution. That rule should be applied in this case, unless the rule of the company avoided its application. The local train upon which the decedent was travelling under the rules of the company, could not arrive at the station when the express was approaching it, because, if it had gone on to the proper stopping points, it would have reached it probably at the same moment as the express, and have been a breach of the rules of the company, and consequently negligence.

[" But, in conformity with the rules, the train upon which decedent was, stopped at a point north of Penn Valley station, on what is termed the Philadelphia track—that is, north of the platform upon which the passengers should be landed, and opposite to another station on an adjoining track, which was known as the Penn Valley station, which had the sign over the door ' Penn Valley Station.' Mr. White was, therefore, in this position : he had got on the train bound for Penn Valley, and the train had gone to a point near the platform upon which he was to land and at the point at which he saw ' Penn Valley Station,' and the train stopped. The question arises, and is for your determination solely, whether a reasonable, cautious and prudent man would, at that point, have attempted to land in the manner in which he did. If you find that a reasonable, cautious, prudent man, under all the circumstances, would have got

[Pennsylvania Railroad Co. *v.* White.]

off at that point, in the manner in which he did, then he would not be negligent.]

[" There may be a question, whether he was induced by reason of any invitation in the conduct of the company to land at this peculiar point. You must say, if a careful, reasonable, prudent and cautious man, from the circumstance of arriving at that particular point, would be justified in landing there as his place of destination. You must also, in this connection, determine whether he was or not bound to look to the right and left to find a platform, to ascertain whether they were going forward, whether there was a platform upon that track where he could land, and whether he should not, in any event, have got off on the other side of the car. What was prudent for him to do? Should he have landed there, or was he, in all views of the case and under all the circumstances, justified in acting as he did? Had he a right to presume that he had reached the end of his journey, and would be justified in getting off the car?]

[" In this connection, if Mr. White had reason to presume fairly from defendant's conduct that he had got to the end of his journey and had arrived at the station, he had a right to rely upon the rule of the company which would forbid another train from passing the station while his train remained there; and, therefore, the obligation to look beyond the point at which his train had stopped was avoided. The rule must work as well in his favor if the defendant's conduct led him to fairly presume he had reached the proper station. It was a strange position for a man to be placed in. It occupied but a moment of time, and the whole question in the case after all is, would a reasonable and prudent man have attempted to get off the train and cross the track as he did, under all the circumstances?]

" If he had notice or knowledge that that was not the station, the plaintiff cannot recover.

" It is, therefore, very important that you should inquire into the testimony which has been offered here upon the part of the defendants, first, that of the brakesman, who was acting as baggagemaster and was attending to the fire, as to whether he had told Mr. White or Mr. Allen to get off at the right hand side. [If they heard that, or he had spoken in such a loud voice that it could be heard, they were bound to observe the direction and get off in the manner directed, because he was the agent of the company for that purpose."]

The defendant's second, third and fifth points, with the answers of the court thereto, were as follows:

2. If the company provided a platform for the exit of passengers at Penn Valley station, to which the deceased was bound, it was his duty as a passenger to leave the train by the means provided by the company, unless a departure from the observance of this duty was justified by the most pressing exigencies, and the necessity for

[Pennsylvania Railroad Co. *v.* White.]

such departure, if it existed, must be shown by the plaintiff, by clear and satisfactory testimony.

Ans. "That I affirm with the instruction I have already given, that if he fairly had the right to presume the station he attempted to get out at was the station to which he was bound, why then it is a question for you to determine whether he, in the exercise of prudence and care and a reliance upon the rules of the company, got off in a proper manner and at a proper time."

3. If the deceased undertook to cross the defendant's track, it was his duty, before so doing, to stop, look and listen, and this duty was the more imperative if he alighted on the opposite side to that provided by the company.

Ans. "That I affirm as an abstract proposition."

5. The evidence showing that the deceased left the train on the wrong side, and there being no evidence of any such paramount necessity for his so doing, the plaintiff is not entitled to recover.

Ans. "That I affirm, with what I have already stated, as to whether you can find evidence in the case from which the plaintiff would fairly infer that he had arrived at Penn Valley station, for which point he was destined. In regard to that, as I said before, you must look to the question as to whether he was not bound to look for the platform, and for approaching danger of any kind."

Verdict for plaintiffs for $5000, and judgment thereon. The defendant took this writ, assigning for error the above portions of the charge in brackets and the foregoing answers to points.

*Chapman Biddle*, for plaintiff in error.—There was no evidence that deceased had seen the sign "Penn Valley Station," and it was error to state it as a fact in the charge to the jury: Sartwell *v.* Wilcox, 8 Harris 123. A passenger is bound to inform himself of the regulations of the company governing the conduct of its trains, where are the stopping stations and where he has the right to alight from the train, and if deceased alighted at a point which was not a regular stopping-place, he did it at his own peril, and it was negligence *per se:* Dietrich *v.* Railroad Co., 21 P. F. Smith 436; Railroad Co. *v.* Zebe, 9 Casey 326; Sullivan *v.* Philadelphia & Reading Railroad Co., 6 Id. 234. There was no necessity for deceased to leave as he did, and the court erred in its qualification of defendant's second point. Calling out the name of the next station and the stopping of the train were not an invitation to alight: Railroad Co. *v.* Aspell, 11 Harris 151; Lewis *v.* London, Chatham & Dover Railway, L. R. 9 Q. B. 70. It was error to state to the jury, that if deceased had reason to presume that he had reached the end of his journey, he had a right to rely upon the rule of the company forbidding another train from passing the station at the same time. The rule required that the local train

[Pennsylvania Railroad Co. *v.* White.]

should stop, and deceased was bound to know this regulation, or at least, to stop, look and listen before crossing the track, and in not doing so, he was guilty of negligence, *per se*: Nagle *v.* Allegheny Valley Railroad, *ante*, 35.

*R. P. White*, for defendants in error.

[SHARSWOOD, C. J.—What was the alleged negligence of the Railroad Company ?]

Mr. *White.*—Notifying passengers that the next station is "Penn Valley," and when the train stops opposite a station with that name thereon, and a passenger alights, he is killed by a passing train.

[SHARSWOOD, C. J.—I thought the brakeman only said, "the next station will be Penn Valley."]

Mr. *White.*—So he did.

[SHARSWOOD, C. J.—Then it is a different thing from saying, the next place we will stop at will be Penn Valley. The train might stop a number of times before reaching that point.]

Mr. *White.*—It would be different if the train had been stopped in an open field; but where the train did stop was directly in front of a place marked as "Penn Valley Station;" there was no evidence on which to submit the question whether White saw this sign. It was displayed at the landing-place for the purpose of being seen. He could not have looked in that direction without seeing it, and he stood on the platform facing it till the car stopped, and then went towards it. He could not have avoided seeing it, and his actions indicated that he did see it and obeyed the intimation it conveyed, that there he was to alight.

The words of the court could not be misconstrued. No one pretended that White lived long enough to tell what he had seen or heard, and the jury knew and could not help knowing that the court was speaking of the inferences to be drawn from the admitted facts of the case.

The announcement of the station and the stoppage of the train, were at least evidence of a request to alight, and the question of negligence was properly left to the jury: Rose *v.* N. E. Railway Co., L. R. 2 Ex. Div. 248 (1876–1877); Bridges *v.* North London Railway Co., L. R. 7 H. L. 213.

Mr. Justice STERRETT delivered the opinion of the court, February 3d 1879.

The facts and circumstances of this case, as disclosed by the testimony, would not have justified the court below in deciding, as matter of law, either that the deceased was chargeable with contributory negligence, or that there was not sufficient evidence of negligence, on the part of the employees of the company defendant, to go to the jury. These were controverted questions of fact which

[Pennsylvania Railroad Co. *v.* White.]

it was the province of the jury to determine, and it would have been error to have withdrawn them from their consideration.

Negligence has been defined to be " the absence of care according to the circumstances," and is always a question for the jury when there is reasonable doubt as to the facts, or as to the inferences to be drawn from them. When the measure of duty is ordinary and reasonable care, and the degree of care varies according to circumstances, the question of negligence is necessarily for the jury. There are, however, certain duties of a precise and determinate nature, the neglect of which the law declares negligence *per se.* Thus it has been repeatedly held that it is the duty of a person about to cross a railroad track to stop, look and listen, and the failure to do is negligence : Pennsylvania Railroad Co. *v.* Beale, 23 P. F. Smith 504 ; Nagle *v.* Allegheny Valley Railroad Co., *ante,* 35. But this rule is not always applicable to passengers leaving a train and crossing the track to reach the depot at the point of destination. There are duties which spring from the relations existing between the carrier and its passengers. It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so : Railroad Co. *v.* Aspell, 11 Harris 147. Ordinary prudence and due regard for the safety of passengers alike require that special care should be exercised at public crossings and depots by passing trains. In view of this the company has provided by rule No. 99 of its regulations " That trains approaching stations, on double track, where a passenger train may be standing, receiving or discharging passengers, must be stopped before reaching the passenger train, and not go forward until the passenger train moves on, or signal is given to come on."

The deceased and his companion took passage on the local train at Trenton for Penn Valley Station, for the purpose of hunting. The testimony tended to prove that after leaving Morrisville, the first station east of their destination, " Penn Valley" was announced as the next station ; that shortly afterwards, the train "slowed up" and stopped in front of a platform and station-house on which was painted, over the door, " Penn Valley Station ;" that as soon as the cars stopped, the deceased, somewhat encumbered by his dog and gun, left the car, on the left side, for the purpose of crossing the track and thus reaching the platform. Just as he alighted the east bound express for New York came along at a rapid rate of speed, struck and instantly killed him. It was also shown that on the opposite, or north side of the track, and a short distance westerly, there was another platform and station at which way-passengers were regularly received and discharged ; but, it did not clearly appear that the deceased was aware of this, nor of the fact that the way train slowed up and stopped before reaching its regular station,

[Pennsylvania Railroad Co. *v.* White.]

on the right, for the purpose of giving the express train a clear track, to which it was entitled at that point. These and other facts, fairly deducible from the testimony, presented the questions which were properly submitted to the jury. It was claimed by the plaintiffs below, that having been warned that the next station would be "Penn Valley," and the train having stopped opposite the platform and station bearing that name the deceased had a right not only to assume that he had reached his destination and was expected to leave the cars, but that the rule of the company, as to passing trains, would be observed, and that he could safely cross the intervening track and reach the station. On the other hand it was claimed that the deceased was notified that the train had not reached the proper station and was warned not to alight on the left side. These were all questions of fact for the jury, and in submitting them the learned judge, among other things, said: "The main question is whether the deceased was guilty of negligence in attempting to land or leave the cars at the point and in the manner he did. Ordinarily it would be negligence in a person attempting to leave a train and cross a track, unless he stopped, looked and listened for an approaching train. It has been very truly said that this rule of law originated and has been applied in cases where persons were travelling with teams, &c., on highways which crossed railroads at grade, and where common prudence would forbid any one to cross without what has been determined ordinary caution. The rule of law should be applied in this case, unless the regulations of the company avoided its application."

He then suggested to the jury the inquiry whether the deceased "was induced by reason of any invitation in the conduct of the company to land at this particular point;" and, in that part of his charge covered by the fifth assignment of error, instructed them that if he had reason to presume fairly, from the conduct of those in charge of the train, that he had arrived at the station, he had a right to rely on the observance of the company's rule, forbidding another train to pass the station while his train remained there. In this there was no error. Whether he knew of the existence of the company's rule or not, he might reasonably assume under the circumstances that he could safely cross the track and reach the platform without fear of a train passing while his train was there. The testimony, as to the time, place and circumstances, was all proper for the consideration of the jury on the question submitted to them, and it was left to them with instructions which could not be misunderstood. It is true, the learned judge was not strictly accurate in saying that the deceased had reached a point "at which he saw Penn Valley Station." There was no positive evidence that he saw either the station or its name, but was it not a fair and just inference from the testimony that he did? This was doubtless all that

[Pennsylvania Railroad Co. *v.* White.]

was meant, and it is not at all probable that the jury were misled by the language employed.

Without noticing in detail those portions of the charge relating to the conduct of the deceased, and assigned for error, it is sufficient to say that the testimony was all fairly left to the jury, with full and appropriate instructions ; and they must have found that, under the circumstances he was not chargeable with negligence which contributed to his injury and death. In other words, the verdict must have been based on negligence of the company alone.

On this subject the plaintiffs below were not without evidence, some of which has already been incidentally noticed. The testimony was such as to suggest the inquiries, whether those in charge of the train on which deceased was a passenger, exercised proper care in not stopping before they reached either station, and in stopping opposite a station, where passengers, destined for that point, would naturally suppose they were expected to leave the cars, whether there was or was not neglect of duty in not warning the passengers to keep their seats until the express train passed; and whether the rule of the company requiring approaching trains to stop when a passenger train was standing at the station, was not disregarded. There was testimony, properly before the jury, on which they might base their verdict, and we find nothing in either of the assignments of error that would warrant us in reversing the judgment.

Judgment affirmed.