## William Kirk Betts v. The Lehigh Valley Railroad Company, Appellant.

191  575
f 199  151

191      575
220      ²511

191   575
122:23    54

191   575
226  ²121

*Negligence — Railroads—Passengers—Crossing at station—" Stop, look and listen."*

The rule that a person about to cross a railroad track must stop, look and listen for an approaching train, is not always applicable to a passenger at a station going to and from his train; the obligation upon him may be totally different from that of a person at a public crossing.

Where a passenger, in crossing a railroad track to reach his train standing at a station ready to receive him, relies upon a rule of the company which forbids other trains to approach while a train is at the station, and does not stop, look and listen before going upon the track, he cannot be charged with contributory negligence, as a matter of law, if in other respects he is careful.

Argued March 13, 1899. Appeal, No. 246, Jan. T., 1898, by defendants, from judgment of C. P. Bradford Co., Dec. T., 1895,

No. 178, on verdict for plaintiff. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries. Before SEARLE, P. J.
The facts appear by the opinion of the Supreme Court.
Verdict and judgment for plaintiff for $5,687.50.

*Error assigned* was in refusing to give binding instructions for defendant.

*Henry Streeter* and *W. T. Davies*, of *Davies & Davies*, for appellant.—It has never been finally decided that a person is relieved from the duty to stop, look and listen before attempting to cross a steam railroad at a public highway crossing, or that he may heedlessly or thoughtlessly cast himself in front of a moving locomotive, and recover damages: Greenwood v. R. R. Co., 124 Pa. 572; Pa. R. R. Co. v. White, 88 Pa. 327; Kohler v. Penna. R. Co., 135 Pa. 346.

Even at a station the plaintiff is not relieved from the duty to stop, look and listen, much less at a public highway crossing, the court below to the contrary notwithstanding: Irey v. Penna. R. Co., 132 Pa. 563; Carroll v. R. R. Co., 12 W. N. C. 348; Penna. R. Co. v. Bell, 122 Pa. 58; Hovenden v. Penna. R. Co., 180 Pa. 244.

Due and ordinary care is to be used in crossing public streets, as in all other transactions in life. Even upon the sidewalks a man is bound to look where he is going: Barnes v. Snowden, 119 Pa. 53; Schmidt v. McGill, 120 Pa. 412; Busby v. Traction Co., 126 Pa. 559; Baker v. Penna. R. Co., 182 Pa. 336; Bacon v. Del., etc., R. R. Co., 143 Pa. 14; Lehigh Val. R. R. Co. v. Greiner, 113 Pa. 600.

*Edward Overton*, with him *William Maxwell*, for appellee.— A passenger who is obliged to pass over an intervening track to reach his train need neither look nor listen, but may assume the way to be safe: Baltimore, etc., R. R. Co. v. State, 60 Md. 449; Gaynor v. Old Colony R. R. Co., 100 Mass. 208; Warren v. Fitchburg R. R. Co., 8 Allen, 227; Klein v. Jewett, 26 N. J. Eq. 474; Weeks v. New Orleans, etc., R. R., 40 La. Ann. 800; P., W. & B. R. R. Co. v. Anderson, 8 L. R. A. 673; Shutt v.

R. R. Co., 149 Pa. 266; Flanagan v. P., W. & B. R. R. Co., 181 Pa. 242; Sonier v. B. & A. R. R. Co., 141 Mass. 10; Terry v. Jewett, 78 N. Y. 338; Parsons v. N. Y. Cent. & H. R. R. R. Co., 3 L. R. A. 683; Warner v. B. & O. R. R. Co., 168 U. S. 339.

OPINION BY Mr. CHIEF JUSTICE STERRETT, May 23, 1899:

In 1894, the plaintiff, whose home was in the borough of Towanda, was regularly employed at Ulster, about eight miles north of the Lehigh Valley Railroad. In reaching his place of business he daily took a local train starting at 6 : 25 o'clock A. M. from Washington street station on the Bernice branch in said borough, about a quarter of a mile from his home. He usually left home about 6 : 15 o'clock A. M. and walked south down Main street to Washington street, and then turned east at Washington street, and went about 170 feet down this street to the station. Washington street station is the freight station of the Lehigh Valley Railroad Company at Towanda, and is located on the Bernice branch at the eastern end of Washington street, in close proximity to the Susquehanna river. There were no buildings beyond the station on Washington street, and no bridge across the river, so that the street crossing was practically limited in its use to a means of access to and from the station for teams and foot passengers. The sidewalk, which was of stone from Main street to the railroad tracks at Washington street crossing, was continued across the railroad by means of planks laid between the rails. This walk led to the platform steps at the north end of the station where the ticket office was located. South of this walk, for the distance of about 100 feet, the tracks were filled in with earth and red shale, forming a level strip of ground where passengers were received and discharged by passing trains. Passengers on the main line necessarily used this earth platform as it extended on both sides of this track. Plaintiff's train, popularly known as the " Geneva train," was made up at and started from this station. It occupied the side track, next to and in front of the station, for the reception of passengers, and the engine stood facing or upon the Washington street crossing. In order to go aboard this train passengers were required to enter from the earth platform, or to pass around in front of the engine, ascend

the platform steps and walk south along the platform until the cars could be conveniently entered.

The following rule, given in evidence was shown to be in force at the time of the accident:

" Any train approaching a station where a passenger train is receiving or discharging passengers must be stopped before reaching the station, and must not proceed until the passenger train moves away or a signal has been given to come on, except where proper safeguards are provided between the tracks." It is admitted that there were no safeguards in this case.

The morning before the accident, the Williamsport and North Branch Railroad Company commenced running a train to Towanda station, about a mile and a half north of the Washington street station, and the junction of the Bernice branch with the main line, to Williamsport, leaving Towanda at 6:15 A. M. and scheduled to arrive at Washington street, at 6:20 A. M. where it was to meet and pass the Geneva train, and leaving there at 6:30 A. M. On the morning of the accident, it was several minutes late. It was at this point, and from the time of starting, in charge of employees of the Lehigh Valley Railroad Company. According to plaintiff's testimony he came down Washington street on the morning of the accident to take his train as usual. His attention was attracted to it by the ringing of the bell. He passed a two-seated top carriage or hack standing on the edge of the street and sidewalk, near the railroad track, and between him and the street to the north, and crossed over the first rail of the main track, when he was struck and injured by the train coming rapidly down on the main track from the north.

He also testified that, knowing the rule of the company above quoted, and seeing his train still standing at the station, he did not stop, look or listen for an approaching train; that a car was standing on a siding just south of the southern sidewalk of Washington street. This siding crossed Washington street to a coal shed which extended for some distance along the main track and partially obstructed the view to the north. His witnesses testified positively that plaintiff's train was not in motion at the time of the accident, and defendant's witnesses testified just as positively that it was.

The learned trial judge refused defendant company's requests for binding instructions, and submitted the case to the jury in

a full, fair and adequate charge, in which the propositions of law involved were amply discussed. The care with which the case was submitted is shown in the following brief summary of the questions submitted to the jury in his charge: "You are to apply the principles which I have laid down to you, as governing the case, to the facts as you shall find them from the evidence, determine first, whether the company was negligent in running the train, called the Williamsport train, over the track at the time they did. If they obeyed the rule as they claim they did, then they would not be guilty of such negligence as would make them chargeable with this accident under the testimony of the plaintiff. Next, inquire whether the plaintiff was guilty of any contributory negligence. If, when he approached the track upon which this train was coming from the north, the train which he intended to take was standing there, it would excuse him from stopping to look and listen; but it would not excuse him from exercising the care which an ordinarily prudent man would exercise under like circumstances. It is for you to determine, as I said first, whether the train was standing still and he was excused from stopping and looking and listening. If you should find he was, then, secondly, did he otherwise exercise the care in going across that track that an ordinarily prudent man would? If he did, and was struck by the train, then he would not be guilty of any negligence which would excuse the company from the negligence which they had committed in crossing that street while the Geneva train, as it is called, was standing upon the track at its station."

The real contention in the case is whether the failure to stop, look and listen was contributory negligence to be declared by the court, as matter of law. Our cases recognize an exception to the general rule. In the recent case of Flanagan v. Philadelphia and Reading R. R. Co., 181 Pa. 237, our Brother FELL said: "It is true that the duty of a person, about to cross a railroad track, to stop, look and listen for an approaching train is not always applicable to a passenger at a station going to and from his train; the obligation upon him may be totally different from that of a person at a public crossing: Penna. R. Co. v. White, 88 Pa. 327; Kohler v. Penna. R. Co., 135 Pa. 346. If the way provided is across a track, he may rely upon the performance by the company of its duty to keep its track clear

while passengers are in the act of passing between the train and the station. But, this is when a way is provided and the passenger is impliedly invited to take it." That case was ruled against the passenger on the ground that "he was not invited to get off where he did," and "the invitation was to alight on the other side, and, in disregarding it, he violated a reasonable rule which it was his duty to observe." The same considerations controlled the decision in Morgan v. Camden & Atlantic Railroad Co., 1 Monaghan, 122, under somewhat different facts. Pennsylvania Railroad v. White, supra, is more nearly like the case at bar. There the train came to a stop at a point opposite to a station, and the order of the company was very similar to the order here. It was there said: "This rule (to stop, look and listen) is not always applicable to passengers leaving a train and crossing the track to reach the depot at the point of destination. There are duties which spring from the relations existing between the carrier and its passengers. It is the duty of the company to provide for the safe receiving and discharging of passengers. It is bound to exercise the strictest vigilance, not only in carrying them to their destination, but also in setting them down safely, if human care and foresight can do so: Railroad Co. v. Aspell, 23 Pa. 147. Ordinary prudence and due regard for the safety of passengers alike require that special care should be exercised at public crossings and depots by passing trains." It was further said, in discussing the plaintiff's case, "He had a right to rely on the observance of the company's rule forbidding another train to pass the station while his train remained there." In Warner v. Balt. & Ohio Railroad Co., 168 U. S. 339, the facts and the rule of the company closely resembled this case, and also Railroad Co. v. White, supra. In the former, the principles enunciated in the latter were adopted on the authority of that and similar cases from other states. Indeed, the doctrine of these cases may be considered as firmly established by a uniform line of decisions.

In the case under consideration, the rule adopted by the defendant company was notice to the public that the tracks on Washington street would be kept clear while the train was at the station receiving or discharging passengers. As was said by the learned trial judge in his charge: "Whether that is a public street or not, they had used the ground there for the pur-

poses of a platform, not only where the platform was, adjoining the station, but also the ground east of the main track of defendant company. If it had been their custom to so use that ground, then as far as the purpose of this suit is concerned, or as far as the people of that community is concerned, who had knowledge of that custom, they had made the street their platform for the purpose of receiving and discharging passengers." The jury has found that plaintiff knew of the rule prohibiting other trains from passing, and that he relied upon it, as he had a right to do. The object of stopping, looking and listening was to avoid the dangers incident to a railroad. But the rule of the company gave notice that as long as the train remained at the station, the tracks would be free from passing trains. This was equivalent to saying to approaching passengers : You need not stop, look and listen, as there will be nothing for you to see. It was in effect, an invitation to passengers to cross the tracks. Under such circumstances, the mere failure to stop, look and listen, without more, cannot be pronounced contributory negligence by the court.

It will be observed that the learned trial judge did not undertake to pronounce on the question of contributory negligence otherwise than as to the rule, stop, look and listen. He was careful to say that the rule of the company did not relieve the plaintiff from the exercise of ordinary care under the circumstances. It is not pretended that if he saw the approaching train and deliberately went in front of it he could recover. But, in view of all the facts and the evidence as to the location of the trains, the obstructions on the sidings and the street, and the very material question as to whether plaintiff's train was standing still or in motion,—as to which the evidence was conflicting,—the case was necessarily for the jury. It was submitted with instructions in which the rights of both parties were carefully guarded.

We find no substantial error in the record. Neither of the specifications of error is sustained.

Judgment affirmed.