# Keifner, Appellant, v. Pittsburg, Cincinnati, Chicago & St. Louis Railway Company.

*Negligence—Railroads—Passengers — Stations — Crossing intervening tracks to train.*

1. Where there are several tracks at a station and passengers are expected to pass over intervening tracks to get upon a train, there is a positive duty upon the railroad company to provide a reasonably safe passage over the intervening tracks, and not to permit locomotives or trains to pass over them while passengers are on the crossing. Negligence in the performance of this duty will subject the company to liability for any resulting injury.

2. In an action against a railroad company to recover damages for death of plaintiff's husband, it appeared that the deceased on the day of the accident went to a station where there were four tracks of a railroad running east and west. The station was on the south side of the four tracks. The track next to the station was the east-bound passenger, the next track, fifteen feet distant, was the west-bound passenger track, and the two tracks beyond were for freight traffic. There was a track platform between the west-bound and the east-bound tracks, and at this point the space between the rails of the east-bound track was planked for a distance of about thirty feet. The deceased entered the station, and while purchasing a ticket the gong sounded, giving notice of the approach of a west-bound train which he desired to take, and the ticket agent immediately announced to the deceased and other passengers, "train going west." The deceased started with the other passengers following, proceeded down the steps to the platform, and while the deceased was about stepping from the planks between the rails of the east-bound track and the track platform from which he was to enter the west-bound train, he was struck and killed by an express train going east on the east-bound track running from twenty-five to thirty miles an hour, and twenty-seven minutes late. The other passengers who were following the deceased saw the situation in time to save themselves. *Held* that the plaintiff was entitled to have a judgment entered in her favor on a verdict for her.

Argued Oct. 19, 1908. Appeal, No. 6, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1902, No. 1,026, for defendant non obstante veredicto in case of Maria Keifner, in her own right and for use of John Keifner, William Keifner, Annie Keifner, George Keifner and David Keifner v. Pittsburg, Cincinnati, Chicago & St. Louis Railway

KEIFNER, Appellant, *v.* PITTSBURG, ETC., RY. CO. 51

Company.   Before MITCHELL, C. J., FELL, BROWN, MESTRE-
ZAT, POTTER, ELKIN and STEWART, JJ.   Reversed.

Trespass to recover damages for death of plaintiff's husband.
Before BROWN, P. J.

The circumstances of the accident are stated in the opinion
of the Supreme Court.

Verdict for plaintiff for $3,500.   The court subsequently
entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non
obstante veredicto.

*W. C. Stillwagon,* with him *Pier Dannals,* for appellant.—
If the way provided is across a track he may rely upon the
performance by the company of the duty to keep the track
clear while passengers are in the act of passing between the
train and the station: Penna. Railroad Company v. White,
88 Pa. 327; Flanagan v. Philadelphia, etc., Railroad Company,
181 Pa. 237; Betts v. Lehigh Valley Railroad Company, 191
Pa. 575; Harper v. Pittsburg, etc., Railroad Co., 219 Pa. 368;
Besecker v. Delaware, etc., Railroad Company, 220 Pa. 507;
Atlantic Railroad Company v. Goodin (N. J.), 45 L. R. A. 671;
Chicago, etc., Ry. Company v. Lowell, 151 U. S. 209 (14 Sup.
Ct. Repr. 281).

And the rule is the same when the passenger is passing from
the station to the train: Harper v. Pittsburg, etc., Railroad
Company, 219 Pa. 368; Atlantic City Railroad Company v.
Goodin (N. J.), 45 L. R. A. 670; Jewett v. Klein, 27 N. J. Eq.
550; Penna. Railroad Co., v. White, 88 Pa. 327; Harper v.
Pittsburg, etc., R. R. Co., 219 Pa. 368; Besecker v. R. R. Co.,
220 Pa. 507.

*Wm. S. Dalzell,* of *Dalzell, Fisher & Hawkins,* for appellee,
cited: Besecker v. D., L. & W. R. R. Co., 220 Pa. 507.

OPINION BY MR. JUSTICE MESTREZAT, January 4, 1909:
We are all of opinion that the court below erred in entering
judgment for the defendant non obstante veredicto.

The defendant company's station at Carnegie is on the south side of its four tracks of railroad which run east and west and parallel each other at that place. The track next the station is the east-bound passenger, the next track, fifteen feet distant, is the west-bound passenger track, and the two tracks beyond are for freight traffic. The station platform extends to the rail of the east-bound track, is eight or nine feet wide, and about 150 feet long. Three or four steps lead from the door of the station down to the platform. There is a track platform between the west-bound and the east-bound tracks from which passengers enter and on which they alight from the west-bound train. At this point, the space between the rails of the east-bound track is planked for a distance of about thirty feet. This is the way provided by the company for passengers to enter a west-bound train from the station and for passengers alighting on the platform between the west-bound and east-bound tracks to enter the station. There is a gong in the station, operated by an electric button in an adjoining telegraph tower, which gives notice of trains approaching the station.

On the morning of December 3, 1901, John Keifner, appellant's husband, went to the station at Carnegie to take a west-bound train for Iffley, a station three miles west of Carnegie. It was due at 7: 05. While he was at the window purchasing his ticket, the gong sounded giving notice of the approach of the west-bound train, and the ticket agent immediately announced to Keifner and the other twelve or fifteen passengers intending to take that train: "Train going west." Keifner and the other passengers started at once on the announcement of the agent for the platform from which the west-bound train was to be entered. They passed through the door leading out of the station, and down the steps to the station platform. Keifner was in advance of the other passengers and as he was about stepping from the planks between the rails of the east-bound track to the track platform from which he was to enter the west-bound train he was struck and killed by an express train going east on the east-bound track, running from twenty-five to thirty miles an hour. This train was twenty-seven minutes late. The ticket agent testified that from the time

the gong sounded it requires about a minute and a half to two minutes for the train to reach the platform.

On the trial of the cause, the court submitted to the jury the negligence of the defendant company and also the contributory negligence of the deceased. The jury returned a verdict for the plaintiff, but the court entered judgment for the defendant non obstante veredicto, citing as authority for its action the cases of Carroll v. Pennsylvania Railroad Company, 12 W. N. C. 348, and Irey v. Pennsylvania Railroad Company, 132 Pa. 563. The learned judge held that as matter of law the deceased was guilty of contributory negligence under the facts of the case.

This case is ruled by the doctrine announced in Harper v. Pittsburg, etc., Railroad Company, 219 Pa. 368, and Besecker v. Delaware, etc., Railroad Company, 220 Pa. 507. There, as here, the only question presented for the consideration of this court was whether the plaintiff's negligence was so clear that the court was justified in declaring it as matter of law.

· The deceased having purchased a ticket for his transportation and being in the defendant's station awaiting the arrival of the train was a passenger and entitled to the company's protection until he entered the train. It was therefore the duty of the defendant company to use care in providing a safe way or approach to the platform from which its west-bound train could be entered. His right to a safe transit over the east-bound track is the same in attempting to reach his train from the station as a passenger who, having alighted from a train, attempts to cross intervening tracks to enter the station. There is a positive duty imposed upon the company in such cases to provide a reasonably safe passage over intervening tracks, and not to permit locomotives or trains to pass over them while passengers are on the crossing. Negligence in the performance of this duty will subject the company to liability for any resulting injury.

The deceased had a right to assume that his safety would not be endangered by permitting a train to pass on the east-bound track while he was crossing to enter the west-bound train, and he could rely upon the company to keep the track

clear: Harper v. Pittsburg, etc., Railroad Company, 219 Pa. 368; Besecker v. Delaware, etc., Railroad Company, 220 Pa. 507. His duty, therefore, to stop, look and listen was not the same as a footman about to cross at a public crossing: Pennsylvania Railroad Co. v. White, 88 Pa. 327; Betts v. Lehigh Valley R. R. Co., 191 Pa. 575; 6 Cyclopedia of Law and Procedure, 608. While he was required to exercise prudence and care in crossing the east-bound track, it was such care as the circumstances demanded. Had he been attempting to cross a railroad track at a public crossing, the failure to stop, look and listen would have been negligence to be declared by the court. There the railroad company has the right to run its trains at any time it sees proper, and persons who attempt to cross the track are required to look out for approaching trains. Under those circumstances the company does not invite the public to cross its tracks for any purpose, nor if its employees in charge of a train exercise care in approaching a crossing is it under obligation to protect the public from injury while crossing the tracks. But here the circumstances are different. In effect the company by providing this means of access to its trains makes the crossing a part of its station so far as its duty to protect the passenger is concerned. The public have no right to cross it except when they as passengers intend to take passage on the company's west-bound train. Here, the way used by the deceased was specially provided by the company for crossing its tracks. Plank thirty feet in length had been laid between the rails of the east-bound track so as to make a proper and safe way for passengers to walk from the station to the track platform of the west-bound track. This was the only way provided by the defendant company for passengers to reach the west-bound train, and therefore every passenger who had purchased a ticket at the station for that train was invited by the company to cross the track by this way to reach the train.

The announcement of the arrival of the west-bound train by the ticket agent was a direction to the passengers in the station to proceed to the train. All the passengers in the station so treated the announcement and acted upon it accordingly.

They had a right to assume that the approach to the train was reasonably safe, and they were not bound to anticipate that their safety would be endangered by the company permitting a train to be run over the crossing on the east-bound track at this time. They could rely upon the performance of the company's duty not to permit a train to pass on that track. In fact there was no train due on the east-bound track at that time, and Keifner's death was caused by a train running twenty-seven minutes late. He was not struck when he stepped upon the track, but he was in the act of stepping from the track when he was hit by the locomotive. He manifestly thought that he could cross the track in safety, and there is nothing in the evidence to show the contrary. The other passengers saw this train and avoided a collision, but they were in the rear of the deceased and had an opportunity to do what he did not have. Of course if he had stopped and waited on the platform to see whether the east-bound track was clear or not, he would not have been run down by the train. But in the absence of evidence showing that he saw the train approaching and had reason to believe that his safety would be endangered, he might rely upon the presumption that the company would do its duty, and proceed to the train as he was directed by the company's agent. The care required of him was such as the circumstances demanded, and whether he exercised that care or not a jury must determine. If when the deceased arrived on the station platform at the east-bound track, the train was approaching at a high rate of speed and so near the crossing that he should have known that it intended to pass the crossing, he should not have attempted to cross in front of it. In other words, if a reasonably prudent man would have anticipated danger in crossing from the conditions as they existed there it was negligence in the deceased to attempt to make the crossing. These were questions for the jury.

The cases relied upon by the court below have no application to the facts of this case. In the Carroll case the plaintiff when injured was crossing the railroad "at the Queen Street crossing, which adjoins the depot on the west." He stepped directly in front of the locomotive, which, if he had used his

sense of sight or hearing, he would have known was approaching. His duty was to stop, look and listen. which manifestly if he had done he would not have been struck by the locomotive. In Irey v. Penna. Railroad Company, 132 Pa. 563, the deceased attempted to reach his train by crossing the tracks at a different place than that provided by the company. A nonsuit was entered, which was sustained by this court in a per curiam opinion. In the opinion of the trial judge it is said (p. 565): "If the accident had happened while the deceased was walking upon the planked way leading from the station to the platform on the opposite side, the question of contributory negligence would have to be decided by the jury, and not by the court; but, unfortunately for the plaintiff, this was not the case. He left a place of comparative safety, and without any invitation, actual or implied, he attempted to reach his train before it was ready to receive him, and by a way much more dangerous than the one provided for him by the company." Keifner was killed when he, by the implied invitation of the company, was walking upon the planked way prepared by it for the use of passengers intending to board a train from the platform on the opposite side of the east-bound track.

The assignment of error is sustained, the judgment of the court below is reversed, and judgment is now directed to be entered on the verdict for the plaintiff.