# Windle et al. *v.* Davis, Director General, Appellant.

*Negligence—Railroads—Passenger—Alighting at station—Moving locomotive—Contradiction of testimony—Number of witnesses.*

1. In accident cases, the trial judge should give careful instructions on the testimony, and in doing so should deal with the number of witnesses on each side, their respective interests, opportunities for observation, and such other matters as affect the weight of the evidence.

2. The status of a passenger alighting on a platform at a station continues as such until he has left the platform, or had a reasonable opportunity to do so; and as such he is not required to exercise, with reference to the tracks, as high a degree of care as a pedestrian at a grade crossing.

3. Where a passenger alighting from a train and walking along a platform is struck by the overhang of a moving train, he cannot

## 24 WINDLE v. DAVIS, DIRECTOR GEN., Appellant.

be charged with negligence as a matter of law where the evidence shows that the platform was congested by the traffic, and that he was jostled or crowded toward the track.

4. There is no rule requiring a railroad company to detain its passenger trains at a station the same length of time on every occasion, and the mere failure to do so is not evidence of negligence.

*Negligence—Damages—Present worth of future damages—Interest.*

5. A jury must compute damages according to law, not merely to their own satisfaction.

6. When passing upon the question of future damages, the jury can allow, as the present worth, such sum only as put at simple interest will, with the accumulations of interest, amount to such damages at the time or times in the future when the jury find from the evidence they will be sustained.

7. In such case the interest must be computed at the legal rate of six per cent.

*Negligence—Parties—Mother of minor—Widow married again—Act of May 5, 1911, P. L. 177.*

8. In an action by a minor for personal injuries, the widowed mother who has remarried may be joined as a party plaintiff in her own right under the Act of May 5, 1911, P. L. 177, and this is the case whether she has or has not contributed to the minor's support.

9. A widowed mother is, equally with a deserted mother, entitled to recover under the Act of 1911.

Argued May 12, 1922. Appeals, Nos. 110 and 111, Jan. T., 1922, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1918, No. 3198, on verdict for plaintiff in case of Robert Windle, a minor, by his mother and next friend, Jennie Joyce, and Jennie Joyce, in her own right, v. James C. Davis, Director General of Railroads, operating the Phila. & Reading Railway. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON and SCHAFFER, JJ. Reversed.

Trespass for personal injuries to minor. Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for Robert Windle for $11,500 and for Jennie Joyce $3,500. Defendant appealed.

*Errors assigned* were, inter alia, (1, 2 and 7) rulings and instructions, sufficiently appearing by the opinion of the Supreme Court, quoting record.

*Wm. Clarke Mason,* for appellant.—The facts shown in the plaintiff's own testimony convict him of contributory negligence in law, because he was walking in a position of danger without the necessity for doing so: Matthews v. R. R., 148 Pa. 491; Hoffman v. R. R., 215 Pa. 62; Sweatman v. R. R., 264 Pa. 286.

A mother cannot recover damages in her own right for injuries to a minor son when there is no proof that she was contributing to his support at the time of the accident or receiving his earnings: Kelly v. Traction Co., 204 Pa. 623; O'Brien v. Phila., 215 Pa. 407.

Under the circumstances disclosed by the record it would seem that no duty to plaintiff had been violated in starting the train, and the evidence relating to prior occasions was improperly admitted to create a standard of duty different from that which the law imposed: Keller v. Ry., 214 Pa. 82.

The charge was erroneous as to damages: Seligman v. Beecher, 36 Pa. Superior Ct. 475; Bockelcamp v. R. R., 232 Pa. 66.

*Thomas James Meagher,* with him *Bernard J. O'Connell,* for appellees.

OPINION BY MR. JUSTICE WALLING, June 24, 1922:

This suit by mother and son is for personal injuries to the latter, whom we shall call "the plaintiff." In the summer and fall of 1918, Robert Windle, the plaintiff, then in his seventeenth year, was employed at Hog Island, and, residing in the northern section of Philadelphia, on October 23d, of that year, boarded the defendant's morning train at Girard Avenue and Thirty-first Street for B Street Station, Hog Island, as was his custom. At the latter point were two passenger tracks, extending in an

easterly and westerly direction and between them was a cinder platform twenty-two feet wide and several hundred feet long, while at its east end B Street crossed the tracks at grade. Beginning two hundred and seventy feet west of the latter street was a shelter station which extended thence westerly a considerable distance along the center of the platform. Plaintiff was riding in the second car from the rear (west) end of the train of twelve cars and, with about five hundred and fifty other passengers, mostly laborers, alighted from the train and walked east toward B. Street upon this platform, so near its edge that he was knocked down and his right leg crushed by an engine coming up behind him on the adjoining track. The jury found verdicts for the plaintiffs and, from judgments entered thereon, defendant brought these appeals.

The tracks and platform were owned by the American International Ship Building Corporation, while the Philadelphia & Reading Railroad Company, defendant, had joint use thereof with the Pennsylvania Railroad Company, and, a primary question is, Which company's engine caused the accident? Admittedly it was one drawing a train easterly on the track south of the platform and plaintiff testified it was defendant's train, from which he had just alighted; in this he was corroborated by his companion, William Morgan, and by one or two other witnesses; while the crew of a Pennsylvania passenger train severally testified, in effect, that their engine caused the accident, two of them to seeing it and others to seeing plaintiff lying injured at the track just as their engine passed, and the conductor of that train did in fact report the accident to his company. This defense was strengthened by evidence of members of the crew of the defendant's train that they had no knowledge of the happening of an accident on that occasion and also by evidence tending to show their train was on the track north of the platform. The Pennsylvania Railroad employees, or at least some of them, knew whether their

train caused the accident and it is difficult to understand why they would give false testimony tending to fasten blame upon themselves and liability upon their employer. While the question of the engine is one of fact, yet it is a case where the trial judge in charging the jury should follow the rule stated by the present Chief Justice in Bockelcamp v. L. & W. V. R. T. Co., 232 Pa. 66, 73, that: "In accident cases, where a strong sympathy naturally goes out to a physically injured man, the trial judge should give careful instructions on the testimony, and in so doing he should deal with the number of witnesses on each side, their respective interests, opportunities for observation, and such other matters as affect the weight of the evidence."

The proof for plaintiff is that on reaching the platform he walked along the side of the train until he had passed the engine, when without warning it suddenly started forward and its overhang struck him before he came to B Street. Considering the large number of passengers, covering, as plaintiff's evidence tends to show, the entire width of the platform, the question of defendant's negligence seems to be one of fact, although defendant's evidence is (not admitting it caused the accident) that its train gave due warning as it moved forward. It may be, as urged for defendant, that its long train could not be started forward so that the engine, standing when plaintiff passed, would overtake him within twenty-five feet as he testifies it did, but we cannot assume that as a fact.

Plaintiff would be clearly guilty of contributory negligence but for the evidence as to the congested condition of traffic upon the platform and of his being thereby jostled or crowded toward the track. His status as a passenger continued until he had left the platform, or had had a reasonable opportunity to do so (Powell v. Phila. & Reading Ry. Co., 220 Pa. 638; Hall v. Bessemer & L. Erie R. R., 36 Pa. Superior Ct. 556) and as such he was not required to exercise, with reference to the

tracks, as high a degree of care as a pedestrian at a grade crossing: Lynn v. Pittsburgh & Lake Erie Railroad, 267 Pa. 41; Struble v. Pennsylvania Co., 226 Pa. 118; Keifner v. Pittsburgh, etc., Ry. Co., 223 Pa. 50; Betts v. R. R. Co., 191 Pa. 575; Pennsylvania Railroad Co. v. White, 88 Pa. 327.

Plaintiff asked his witness, William Morgan, who had been accustomed to go to Hog Island on defendant's morning train, a question, as follows, viz: "When that train would arrive at the station down there in the course of your using it, did the train move or get into motion before the passengers had vacated the station and crossed the crossing, or did it get into motion only after the passengers had left the station and made the crossing? (Objected to by counsel for defendant. Objection overruled; exception to defendant.) A. Only after the passengers had made the crossing." The admission of this testimony was error. By giving due warning and using care according to the circumstances, a train may move at any time after the passengers have made their exit or entrance and need not remain stationary until the platform has been cleared; and that it may have so remained on other occasions is immaterial. The movement of the train when it was moved being lawful it was not rendered unlawful by the delay in doing so at other times. There is no rule requiring a railroad company to detain its passenger trains at a station the same length of time on every occasion, and the mere failure to do so is not evidence of negligence. There is a like assignment of error as to a similar ruling on evidence when plaintiff was testifying, and both are sustained.

On the question of the present worth of future damages the trial judge instructed the jury, inter alia, that: "You have been given by a witness what he testified are mathematically accurate calculations of the present value of $100, payable in weekly installments over varying periods of years—I think from one to forty-two, at

five and six per cent interest, and if these calculations will be of any aid to you in reaching your conclusions as to present values, either as to the mother, or as to the boy when we come to consider the measure of damages in his case, you may use them. If not, you will disregard them entirely and make your own present value calculations in your own way and to your own satisfaction." Without stopping to consider the first part of what we have just quoted, the last clause, that, "If not, you will disregard them entirely and make your own present value calculations in your own way and to your own satisfaction," is error, for it left the jury entirely without a guide in the performance of that important duty. It was misleading: see McLane v. Pittsburgh Rys. Co., 230 Pa. 29; Gerber v. Phila., 60 Pa. Superior Ct. 119. A jury must compute damages according to law, not merely to their own satisfaction, and when passing upon the question of future damages they can allow, as the present worth, such sum only as put at simple interest will, with the accumulations of interest, amount to such damages at the time or times in the future when the jury find from the evidence they will be sustained. Moreover, the interest must be computed at the lawful rate of six per cent: see 17 Corpus Juris 906.

The plaintiff's mother was properly joined, both as next friend and in her own right. Plaintiff's father had been dead for some years and his mother was remarried at the time of the accident, and there is no evidence as to whether she was then contributing to his support. However, such proof is not necessary under the Act of May 5, 1911, P. L. 177; the first section of which is as follows, viz: "That whenever the father of any minor shall not have supported or contributed to its support during a period of six months, or where the mother of such minor shall be charged by law with the support of such minor, such mother shall have the same right to the services of such minor, and the same right to be compensated for the loss of such services, as are now by law possessed by

the father of any such minor." In Crowley v. Pennsylvania Railroad Company, 231 Pa. 286, 290, we say: "The right of a widowed mother to recover for loss of service of her minor child, is not open to question since the decision of this court in O'Brien v. Phila., 215 Pa. 407. It was there held that under the Act of June 26, 1895, P. L. 316, a deserted mother has a right of action in such case. It follows, a fortiori, that the same right belongs to a widowed mother." The widowed mother is equally, with the deserted mother, entitled to recover under the Act of 1911, which is unlimited as to the cause of the father's failure to support, and vests in the mother the right of action for an injury to her minor child, wherever such support has ceased for a period of six months. The right thus vesting in the mother is as broad as that of the father and exists without reference to the question of her prior support of the minor or of her remarriage: see Gulla v. Lehigh Valley Coal Co., 28 Pa. Superior Ct. 11. The trial court, therefore, properly refused to sustain the objection to the mother's right to sue as such for the loss of the services of her minor son.

The first, second and seventh assignments of error are sustained and thereupon the judgments are reversed and a venire facias de novo awarded.