Ellen Marie JONES, Administratrix of the Estate of Florence A. Strothers, deceased, Plaintiff,

v.

Robert W. FRIESEL and Margaret Brown, Defendants.

Civ. No. 60–246.

United States District Court
W. D. Pennsylvania.

Aug. 3, 1962.

Wray G. Zelt, Washington, Pa., for plaintiff.

Harry W. Miller, of Royston, Robb, Leonard, Edgecombe & Miller, Pittsburgh, Pa., for defendant Brown.

Norman J. Cowie, of Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant Friesel.

MARSH, District Judge.

The plaintiff, administratrix of the estate of Florence A. Strothers, deceased, brought this diversity action under the Pennsylvania Wrongful Death and Sur-

vival Acts to recover damages from the defendants, Robert W. Freisel and Margaret Brown, for the death of Florence caused by the defendants' negligence in an automobile accident which occurred on July 22, 1959. Death was instantaneous. Florence was 34 years old at the time. In the wrongful death action, the jury returned a verdict for the plaintiff on behalf of Gwendolyn Strothers, Florence's mother, in the sum of $9,000.00, and on behalf of the estate in the sum of $30,000.00.

In her motion for a new trial the defendant, Brown, asserts that the verdict is excessive;[1] the other grounds were withdrawn.

In our opinion, under the evidence the verdict of $30,000.00 in the survival action is excessive, but the verdict in the wrongful death action is not.

■ It is settled that the trial courts should not interfere with jury verdicts in death cases unless unfairness, mistake, partiality, prejudice or corruption is shown, or the damages appear grossly exorbitant. The verdict must be clearly and immoderately excessive so as to offend the conscience and judgment of the court. Stark v. Lehigh Foundries, 388 Pa. 1, 130 A.2d 123, 136 (1957). The federal judiciary has a strong belief in the right to trial by jury and does not look with jaundiced eye upon a plaintiff's verdict after it has been given the careful and conscientious scrutiny of a jury. As stated in Armit v. Loveland, 115 F.2d 308, 314 (3d Cir. 1940):

"Courts in general are reluctant to disturb a jury's verdict on the ground of excessiveness where the damages are unliquidated and there is no fixed measure of mathematical certainty."

1. Prior to trial, the defendant, Friesel, settled with plaintiff who released him under the Uniform Contribution Among Tortfeasors Act.

2. Courts have used annuity tables as a guide to present worth in determining whether or not a verdict is excessive.

See also, Jones v. Atlantic Refining Co., 55 F.Supp. 17 (E.D.Pa.1944). But it has also been said that if excessive verdicts were permitted to stand, the right of trial by jury would be seriously jeopardized, and the power of the trial judge to reduce the verdicts or set them aside is not in derogation of the right to trial by jury but is one of the historic safeguards of that right. Cf. Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 352–353 (4th Cir. 1941); Smith v. Times Pub. Co., 178 Pa. 481, 36 A. 296 (1897).

■ In the wrongful death action Gwendolyn Strothers is entitled to recover the financial contributions which she could have expected with reasonable certainty from her unmarried daughter, Florence. Gwendolyn, 65 years old, had a life expectancy of 17.4 years. Florence had a life expectancy of 35.4 years. Prior to the accident, Gwendolyn was buying a house and lived in it with Florence, two other daughters, and two grandchildren. Both Florence and Gwendolyn worked as domestics in Washington, Pennsylvania. Gwendolyn was getting old and had experienced an illness which decreased her earning power. During Gwendolyn's illness Florence paid the bills and contributed $50.00 a month toward the purchase of the house. From the evidence it was reasonable for the jury to have found that the monthly contributions at the rate of $50.00 would have continued as Gwendolyn became older and unable to work. Computed at the rate of $50.00 per month, Gwendolyn would be entitled to $1,635.00 from the date of death until trial, and for the remainder of her life expectancy $10,440.00, the present worth of which, discounted at the rate of 6%, is $6,286.00.[2] Adding the funeral bill of $1,190.14, the total is $9,111.14. Obvi-

See Southern Pac. Co. v. Guthrie, 186 F.2d 926 (9th Cir. 1951); Jones v. Atlantic Refining Co., 55 F.Supp. 17 (E.D. Pa.1944); Stark v. Lehigh Foundries, 388 Pa. 1, 130 A.2d 123, 136 (1957); Murray v. Philadelphia Transp. Co., 359 Pa. 69, 58 A.2d 323, 326 (1948).

ously, the verdict in the wrongful death action is not excessive.

■ In the survival action plaintiff is only entitled to recover such damages as would reasonably compensate the decedent's estate for the loss sustained by it as a result of Florence Strother's death. It is difficult to believe that Florence would ever have accumulated $30,000.00; however, wide latitude should be given to the jury's discretion. Cf. Swartz v. Smokowitz, 400 Pa. 109, 161 A.2d 330 (1960).

From the evidence the jury could have found that Florence's earning power was reflected at $1.00 per hour for five days a week for 50 weeks a year. There was no evidence as to her education. She also received lunch as part of her compensation, the value of which does not appear. Using the wages as a measure, Florence could have earned up to trial $5,504.00, and during the remainder of her expectancy $70,840.00 the present worth of which, discounted at the rate of 6%, would be about $28,996.00, or a total of $34,500.00. Deducting from this amount the award of $9,000.00 in the wrongful death action, the remainder is $25,500.00. From the remainder should be deducted Florence's cost of maintenance.

There was no direct evidence from which the jury could calculate this item; the parties were content to leave this deduction to the speculation of the jury. See: Bernstein, "Damages in Personal Injury and Death Cases in Pennsylvania —A Supplement", Pennsylvania Bar Association Quarterly, vol. XXVI, No. 1, pp. 26, 35 (October 1954). Counsel for Brown argues: "The Department of Labor and Industry for the Commonwealth of Pennsylvania says the minimum amount needed for a female for bare existence is $69.00 [a month]." However,

this estimate was not offered in evidence by the defendant, and it appeared, as argued by plaintiff, that a family of six persons dwelling together for economic reasons reduces the per capita expenses of each. It appeared that prior to her mother's illness Florence had saved some money which she spent for her mother's medical expenses and maintenance but the amount was not disclosed. She was frugal and had no bad habits.

Giving to plaintiff the benefit of the jury's wide discretion as to the speculative elements, i. e., cost of maintenance and the value of the lunches, I would not consider a verdict in the neighborhood of $20,000.00 excessive.[3] However, in my opinion the $30,000.00 verdict is clearly excessive.

In the interest of justice, however, in this case I do not feel compelled to grant a new trial unconditionally. Northern Pacific R. R. Co. v. Herbert, 116 U.S. 642, 646–647, 6 S.Ct. 590, 29 L.Ed. 755 (1886).[4] If a new trial is to be held, it will be on the issue of damages in the survival action alone. Rule 59(a), Fed. R.Civ.P., 28 U.S.C.A.; Yates v. Dann, 11 F.R.D. 386 (D.Del.1951). It is my judgment that in order to do justice between the parties, the plaintiff should be required to remit in the survival action all monies awarded under the verdict in excess of $20,000.00. If plaintiff fails to file a stipulation to that effect within twenty days, a new trial on the issue of damages in the survival action will be awarded.

■ One other matter remains for discussion. Counsel for Brown argues that present worth should be computed at the rate of 4½%. Counsel for plaintiff contends that "there is no arbitrary rate that the Court must use in computing present worth value", citing Thomas v. Conemaugh Black Lick Railroad, 133

---

3. There was no evidence which would permit the jury to speculate that Florence would receive increased wages in the future. I think a charge to permit such speculation without some evidence on which to base it would be error. Cf.

Swartz v. Smokowitz, 400 Pa. 109, 161 A.2d 330, 331–332 (1960).

4. See the opinion of Judge Delehant in Rice v. Union Pacific R. Co., 82 F.Supp. 1002 (D.Neb.1949) and the authorities collected therein.

F.Supp. 533, 544 (W.D.Pa.1955). I do not agree with either counsel. The Thomas case is not apposite since it was decided under federal law, the action having been brought under the Federal Employers Liability Act. Pennsylvania law applies to this diversity action.

In Murray v. Philadephia Transp. Co., 359 Pa. 69, 58 A.2d 323 (1948), citing Windle v. Davis, 275 Pa. 23, 118 A. 503, 505 (1922), the Supreme Court of Pennsylvania held that in Pennsylvania the legal rate of interest (6%) is employed when reducing a sum to its present worth. The words of Murray and Windle are peremptory and it is my obligation to follow them although I agree [5] that this view is unrealistic. Kowtko v. Delaware and Hudson Railroad Corp., 131 F.Supp. 95, 106 (M.D.Pa.1955) and the cases cited therein.

Subsequent to oral argument, plaintiff's counsel submitted the case of Stark v. Lehigh Foundries, supra, at p. 136, contending that the 6% rule has been changed and that the discount rate is in the jury's discretion. I do not so interpret this decision. The Murray and Windle cases were not mentioned. I do not consider that the dicta contained therein should be construed as overruling the 6% rule sub silentio.

Furthermore, it appears that the Stark case was decided on March 18, 1957. In Sherman v. Manufacturers Light and Heat Company, 389 Pa. 61, 132 A.2d 255, decided subsequently on May 27, 1957, it appears that the trial judge instructed the jury according to the 6% rule. On appeal, the matter was squarely before the Supreme Court which affirmed the judgment and refused to overrule Murray and Windle. See dissenting opinion at p. 260. Also in Swartz v. Smokowitz, supra, decided in 1960, the Supreme Court cites with approval the Murray case and the Superior Court case of Alleva v. Porter, 184 Pa.Super. 335, 134 A.2d 501, decided on September 3, 1957—subsequent to the Stark case. In the Alleva case Judge Hirt stated at page 503:

> "The effect of a computation of damages at their present worth, based upon interest *at the legal rate,* in calculating the worth of this boy's economic life to his estate, may not be minimized." (Emphasis supplied.)

These authorities, i. e., Sherman, Swartz and Alleva, indicate to me that the 6% rule laid down in Murray and Windle has not as yet been overruled.

An appropriate order will be entered.

5. In dissenting, Mr. Justice Stern criticized this rule as unrealistic.