## Reed Stores Corp. et al. v. Sears, Roebuck & Co. et al.

*Robert J. Puderbaugh* and *Jubelirer, Jubelirer, & Smith,* for plaintiffs.

*Scheeline & Leopold* and *Robert C. Haberstroh,* for defendants.

PATTERSON, P. J., November 9, 1943.—Plaintiffs instituted the above-entitled suits against Sears, Roebuck & Co., tenant of the building known as premises 1405-05½ Eleventh Avenue, Altoona, Blair County, and against defendant Anastios Notopoulos as owner of the said building. Plaintiffs occupied, under lease from the owner, their respective portions of the first-floor front of the said building. The defendant company was lessee, in possession of the rear part of the basement, first and third floors of the said premises, and all of the second floor. Defendant used the leased portions of the building in question for storage and warehouse purposes. The portion of the third floor leased to defendant, Sears, Roebuck & Co. was expressly limited to a certain space in the rear thereof and was approximately 30 x 50 feet in size. In addition to this space there was an open, unfinished attic portion of the third floor. This portion was not included in the lease to defendant. Defendant stored merchandise on the front or unfinished portion of the attic which was not included in the lease.

On August 4, 1939, a portion of the third-floor front, estimated to be 20 x 20 feet, collapsed and merchandise, estimated from 8,000 to 12,000 pounds by witnesses for the plaintiffs, and admitted to be 9,095 pounds by defendant's assistant manager, fell from

the point of collapse to the second floor. The collapse of the floor caused the sprinkler system, which had been installed in the building for the purpose of fire protection, to break and water ran down through the second floor and damaged the merchandise of the plaintiffs which was in the front portion of the first floor.

The rear part of the third floor, approximately 30 x 50 feet, which was described in the lease made to defendants, was supported by a double row of cast iron columns based upon the second floor. According to the testimony of Mr. Stevens, for defendant, there may have been one wooden column supporting the unfinished portion of the attic which collapsed, and that part of the third floor was approximately ten feet longer than the rear part which they had under lease. Defendant was also in possession of the entire second floor, and the matter of support of the third floor, both front and rear, insofar as columns or posts were concerned, was apparent to defendant, but there is no evidence that defendant considered the support of the third floor from that point of view.

Plaintiffs called witnesses, contractors, and others who were familiar with the construction of the building and had examined it after the floor collapsed, who testified that the portion of the floor which collapsed was constructed by using two - by - ten - inch hemlock joists 24 feet long; that the joists were exposed at the end under the lower part of the roof toward the eaves of the building; that they were visible to any person who made an examination of the structure of the third floor at any time prior to the collapse. That part of the third floor which collapsed, being approximately 20 feet wide and 20 to 35 feet in length, included an area which had formerly been either a stairway or a light areaway. Plaintiffs had witnesses who testi-

fied that that part of the construction was evident from the joints of the flooring which were visible on the third floor prior to the collapse. Plaintiffs offered testimony of several witnesses to the effect that that part of the front portion of the third floor which collapsed under the load placed upon it by the defendant was not of proper construction to carry a load of upwards of 9,000 pounds. Plaintiffs contend that defendant was negligent in overloading that portion of the floor, which was not included in its lease, and that defendant had failed to use ordinary care in ascertaining the capacity of the floor before placing the merchandise, weighing upwards of 9,000 pounds, upon it.

Mr. Craag, manager of defendant company's store, testified as follows:

"Q. In other words, you have never made inspection or attempted to examine the support of the attic that was being given by beams from the second floor supporting that particular floor in the attic?

A. No I never gave any particular attention to that.

Q. Did you ever make any inspection of the attic previous to the storage of your merchandise? ·

A. The instruction was that nothing of any weight was to be put in there on the center of the floor.

Q. Please answer my question, if you can.

A. I won't say I inspected that like I did the rest of the building.

.    .    .    .    .    .    .    .

Q. When you went into the attic did you attempt to look or see whether the flooring covered the entire part of the attic floor?

A. No, sir. When I went into that attic I saw the flooring and I never paid any more attention to it.

Q. It was there and could be seen if you had attempted to examine it?

A. If I had any reason to examine it it could be seen.

Q. It could be seen with the naked eye if you wanted to examine it?

A. Right."

Mr. Stevens, the assistant manager who had charge of the storage, testified that he knew the front portion of the attic was not supported by columns like the rear portion which they had leased, but that he had not made any careful investigation or examination of the front portion of the third floor upon which he loaded the 9,095 pounds of merchandise that caused the floor to collapse and break the sprinkler system, which resulted in the injury to plaintiffs.

Defendant did not show that it had made any investigation of the carrying capacity of the portion of the floor which collapsed. Nor did it show that it was using that portion of the third floor which collapsed either by consent or with the knowledge of the owner of the building. In fact it was not included in the lease.

Plaintiffs argue that defendant was a trespasser in using for storage purposes that part of the third floor which was not included in its lease and which collapsed, and that the damage sustained by plaintiffs should be referred to the original trespass, and contend that both the original trespass on the unleased portion of the attic and the failure of defendant to investigate the carrying capacity before loading the same contributed to the injury sustained by plaintiffs: Mars v. Meadville Telephone Co., 344 Pa. 29.

There was ample testimony on the part of plaintiffs, which was not seriously contradicted by defendant, that the structure of that portion of the building which collapsed was not intended for storage purposes, and that condition could have been ascertained upon investigation.

The testimony of the witnesses for plaintiffs, the photographs admitted in evidence, and the testimony of H. J. Baum, witness for defendant, all supported the contention of plaintiffs that the break-through was at a point where the floor was loaded with the 9,000 to 12,000 pounds of merchandise, and an examination of the joists, which were visible at the ends under the lower part of the roof, would have disclosed the fact that they were not of sufficient size to carry the load placed upon the floor at that point.

" 'The question whether a person charged with negligence or negligent acts or omissions should have foreseen the injuries resulting from these acts or omissions is for the jury, if there is any credible evidence from which a reasonable conclusion can be drawn in support of the claim of neglect of duty' ": Paulscak v. Hoebler et al., 330 Pa. 184, 192.

At the conclusion of the testimony a motion for compulsory nonsuit as against Anastios Notopoulos was sustained. The amount of damage was stipulated by the parties as follows: Reed Stores Corporation, $350; Moskin Stores, Inc., $700.

The court is of the opinion that there was credible evidence from which a reasonable conclusion could be drawn that defendant should have foreseen the injuries which resulted from its failure to use ordinary care in investigating the construction and carrying capacity of that portion of the floor which collapsed under the load placed upon it by defendant, and that the case was properly submitted to the jury for its determination on the question of negligence and want of due care under the circumstances. Therefore, defendant's motion for new trial must be overruled in each case.

## Decree

Now, November 9, 1943, defendant's motion for new trial in the case of Reed Stores Corp., a New Jersey

corporation, v. Sears, Roebuck & Co., is overruled at the cost of defendant.

Now, November 9, 1943, defendant's motion for new trial in the case of Moskin Stores, Inc., v. Sears, Roebuck & Co., is overruled at the cost of defendant.