Mars *v.* Meadville Telephone Company, Appellant.

Argued December 1, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Albert L. Thomas,* of *Thomas & Kiebort,* for appellant.

*Edmond C. Breene,* with him *A. B. Jobson,* of *Breene & Jobson,* and *John H. Bozic,* for appellee.

OPINION BY MR. JUSTICE DREW, January 20, 1942:

Plaintiff, Florence Mars, recovered a verdict awarding damages for the death of her husband, Arthur Mars. After motions for judgment n. o. v. and for a new trial had been refused, and judgment entered on the verdict, defendant, Meadville Telephone Company, took this appeal.

When all doubts and conflicts in the testimony are resolved in plaintiff's favor, as they must be in view of the jury's verdict (*Anstine v. Penna. R. R. Co.,* 342 Pa. 423, 425), the following facts appear: A cow belonging to Arthur Mars, the decedent, had strayed into his meadow, and while he was driving her back to the herd, she brushed against one of defendant's poles standing at the entrance to the meadow, causing it to fall and fatally injure him; the pole had been set thirty years before, had never been replaced, although other poles in the vicinity had rotted out and fallen, and was decayed entirely through at the ground line; an adequate inspection on defendant's part would have disclosed this dangerous condition.

From these facts the jury was clearly warranted in finding defendant negligent. The question is whether it

was this negligence, rather than the intervening act of the cow, which was the proximate cause of the accident. The rule is thus stated in Cooley on Torts (1st ed., p. 70; 4th ed., §50) : "If the original act was wrongful, and would naturally, according to the ordinary course of events, prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent." This was quoted (with minor changes) and followed in *Murray v. Frick*, 277 Pa. 190, 194; *Howarth v. Adams Express Co.*, 269 Pa. 280, 282; *Wood v. Penna. R. R.*, 177 Pa. 306, 310. To the same effect is *Murray v. Pgh. Athletic Co.*, 324 Pa. 486, 492. The principle is well illustrated in *Murray v. Frick*, supra, where a window screen negligently secured by defendant's servant was knocked loose and fell upon plaintiff when an employee of a tenant closed the window. Defendant's failure to properly fasten the screen was held to have been the proximate cause of the injury, the Court saying (p. 194) : "One who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof, although the innocent act of a third party may have contributed to the final result." And when there are two contributing acts, it is not proximity in time that determines which of them is the proximate cause of the resulting injury. Our cases from *Burrell Tp. v. Uncapher*, 117 Pa. 353, to *Fehrs v. McKeesport*, 318 Pa. 279, have quoted and followed the rule thus expressed in Shearman & Redfield on Negligence (3rd ed., New York, 1874) §10: "Negligence, however, may be the proximate cause of an injury of which it is not the sole or immediate cause. If the defendant's negligence concurred with some other event (other than the plaintiff's fault) to produce the plaintiff's injury, so that it clearly appears that but for such negligence the injury would not have happened, and both circumstances are closely connected with the injury in the order of

events, the defendant is responsible, even though his negligent act was not the nearest cause in the order of time." See also *Darrah v. Wilkinsburg Hotel Co.,* 318 Pa. 511.

In the instant case defendant had left a pole in such defective condition that in the ordinary course of events it would prove injurious to persons in the path of its fall when any outside force, however slight, chanced to come in contact with it; and in the order of events it was natural and to be expected that some such force would be applied, as, for example, by an animal entering or leaving the meadow. Indeed, it is highly probable that this pole, like others of defendant's poles, would have fallen of its own accord. Defendant's negligence was thus without any doubt the proximate cause of decedent's death, and the motion for judgment n. o. v. was correctly refused.

The pertinent facts bearing on the motion for a new trial are undisputed. Plaintiff's husband was thirty-one years and one month old, robust, and healthy. With the help of two hired hands he worked his own and two leased farms totaling three hundred acres, sold milk from his sixteen cows, made daily collections of other farmers' milk and delivered it to a neighboring dairy, skidded logs with two of his teams in winter, and bought potatoes and transported them in his truck to market in Pittsburgh, returning with lime and coal, which he peddled. His total net annual earnings amounted to $3,000, of which plaintiff testified $1,000 was contributed for the support and maintenance of herself and the three minor children.

Defendant objected to plaintiff's testifying from her own knowledge as to the amount of her husband's earnings without first accounting for the non-production of his record books. This point was determined against defendant's contention in *Perry v. Ryback,* 302 Pa. 559, 567-68, in which it was held that the best evidence rule relating to documents was inapplicable when the issue was not the contents of a writing but the amount of a decedent's earnings.

Defendant also assigns as error the admission of evidence of the husband's income from investments in business and from the labor of others. The reason for excluding income from investments as a basis for determining loss is that such income, not arising out of any efforts of the recipient, will not be lost on his death. The rule is inapplicable, however, to a business in which "the predominating factor is the directing intellectual and physical labor of the individual" who operates it *(Baxter v. Phila. & R. Ry. Co., 264* Pa. 467, 472), because in such a case it is the skill and effort of the owner rather than the property itself which produces the income. In the *Baxter* case we affirmed admission of evidence of decedent's earnings from his blacksmith shop, where he employed two helpers. The present case is similar. It is amply clear that plaintiff's husband, a man of energy and resourcefulness, was the force responsible for the profits reaped from his enterprises. His capital investment consisted of only a few hundred acres of land, most of it leased, some horses and cattle, and a truck, all of which were managed by himself and two hired men. Hence evidence of his earnings therefrom was properly admitted.

The jury awarded $1,189.25 for medical and funeral expenses and $23,500 as pecuniary loss to plaintiff and the children. Although we are loath to disturb the amount fixed by a jury it must be reduced in this case. Decedent's life expectancy, according to the average of the Carlisle, Farr, and Northampton tables, was 31.125 years. If money is assumed to produce five per cent net, by Giauque & McClure's "Tables for Ascertaining the Present Value of Damages for Death or Injury by Wrongful Act, Negligence or Default" (4th ed.), it appears that the present worth of $1,000 a year, the amount plaintiff testified she had been receiving for maintenance, for 31.125 years is $15,619. This amount is not to be taken as the absolute criterion, however, but is subject to modification on account of various factors, including the possibility of longer or shorter life than that indi-

cated by the mortality tables *(Littman v. Bell Tel. Co. of Pa.,* 315 Pa. 370, 373) and of lessened earning power during later years *(Ward v. Pittsburgh Railways Co.,* 332 Pa. 152, 155). Plaintiff was also entitled to compensation for the loss of other, non-pecuniary benefits which decedent as a husband and father would have bestowed on his family: *Gaydos v. Domabyl,* 301 Pa. 523, 530. We are of the opinion that the charge of the learned court below on this point was, under the circumstances of the case, not misleading or prejudicial to defendant. A full and careful consideration of all the elements of the case leads us to the conclusion, however, that the jury erred in applying the standards given it to the evidence presented, and that plaintiff will be justly and fairly compensated by the sum of $17,000. To this must be added the $1,189.25 for expenses, which has not been questioned.

The judgment is reduced to $18,189.25 and, as modified, is affirmed.