## ROSENAL v. UNITED STATES.
### Civ. Action No. 6748.

United States District Court
W. D. Pennsylvania.
Jan. 11, 1951.

Mercer & Buckley, Pittsburgh, Pa., for plaintiff.

Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for defendant.

McVICAR, Chief Judge.

Leopold Rosenal, Administrator of the Estate of Bernard Rosenal, deceased, brought this action on behalf of the next of kin of the decedent based upon the Pennsylvania Statutes of 1851 and 1855 and also, an action as Administrator on behalf of the Estate based on Sec. 35(b) of the Fiduciaries Act of 1917, as re-enacted by the Act of 1937, P.L. 2755, 20 P.S.C. 3 Appendix, § 772. The two actions were consolidated and brought against the United States based upon the Federal Tort Claims Act.[1] The case was tried without a jury and the following Findings of Fact, Conclusions of Law, Opinion and Order have been made by the Court.

#### Findings of Fact

1. On August 24, 1947, a convoy of thirteen Army vehicles left Fort Monroe, Virginia, for South Park, Allegheny County, Pennsylvania.

1. 1948 Revised Judicial Code, 28 U.S.C.A. §§ 1346, 2671 et seq.

2. On August 26, 1947, the convoy was met by an Allegheny County policeman on the outskirts of Pittsburgh and escorted to its destination.

3. Four of the thirteen vehicles were armored cars, and the fourth armored car in the convoy was driven by Sergeant Homer Ulrich.

4. At about 1:45 P.M. August 26, 1947, the armored car driven by Sergeant Ulrich, while following the three other armored cars of the convoy, had completed an up-grade to the crest of a hill on Curry Hollow Road, traveling in a southerly direction.

5. Curry Hollow Road is made up of two 9 foot lanes, with a center strip of asphalt, having a 2 to 4 inch elevation and a width of about 4 feet.

6. The armored car had four forward speeds and a reverse gear.

7. As the armored car proceeded over the brow of the hill and began its descent, Sergeant Ulrich shifted from low through second and third, and was attempting to shift into the fourth and fastest forward gear, when the left front wheel of the armored car struck the dividing strip of the highway, made several spins and proceeding on its own left hand side of the highway, struck a Hudson car proceeding in a northerly direction along Curry Hollow Road, in which the decedent was a passenger, sitting in the back seat.

8. A heavy rain was falling at the time of the collision and visibility was limited.

9. The driver of the Hudson car, upon perceiving the erratic course of the armored vehicle, pulled the Hudson car sharply to the right in an attempt to avoid the collision.

10. At the time of the collision, at least two wheels of the Hudson car were on the berm, off the cartway to its own right side of the highway.

11. The decedent, as a result of the impact, was thrust through the back of the car and was killed instantly.

12. Three similarly constructed armored cars, a part of this convoy, had passed over this same point without any mishap occurring.

13. The decedent, eighteen years of age at the time of death, was in good health and had consistently enjoyed good health throughout his lifetime.

14. The father of decedent, aged forty-three, was in good health, and both of decedent's parental grandparents had lived over seventy years.

15. The father was a college graduate and it was his intention to send the decedent to college, the financial means being available.

16. The funeral bill was $655.00, a reasonable amount under the circumstances.

## Conclusions of Law

1. Jurisdiction is vested in this Court by virtue of the Federal Tort Claims Act, 28 U.S.C.A. § 931 [1948 Revised Judicial Code, 28 U.S.C.A. §§ 1346, 2671 et seq.].

2. An inference of negligence arises by reason of the armored car being on its own left hand side of the highway.

3. The driver of the armored car was negligent, under all of the circumstances, in attempting to shift gears upon a wet surface from first, through second and third into the vehicle's highest speed gear.

4. The operator of the armored vehicle was negligent in operating the armored car without having it under proper control.

5. The negligence of the operator of the armored car was the proximate cause of the death of Bernard Rosenal.

6. Under the Pennsylvania Wrongful Death Acts of 1851 and 1855, the Administrator of the Estate of Bernard Rosenal is entitled to recover the funeral expenses and the pecuniary loss sustained by the next of kin as a result of the death of the decedent; in this case, said total amount being $700.00.

7. Under the Pennsylvania Survival Act of 1937, the Estate of the decedent is entitled to recover as damages the earnings of the decedent during his life expectancy, from his majority, less the cost of maintenance, the amount reduced to its present

worth; in this case, the amount recoverable being $20,000.00.

### Opinion

The presence of the armored car on the wrong side of the road, without more being shown, gives rise to an inference of negligence and casts upon the defendant the duty of going forward with sufficient evidence to explain its presence on the wrong side of the road. Miles v. Myers, 353 Pa. 316, 45 A.2d 50. The evidence shows that immediately preceding the accident, three armored cars of the same type safely traversed this portion of the highway, and that the armored car involved in this accident was able to proceed to South Park and from there to Fort Monroe, Virginia, under its own power and without repairs being made upon it. There is no evidence to indicate that the condition of the road at the point of accident was in any manner different from the condition of the road preceding the point of accident. The circumstances under which the accident in this case occurred required the government to furnish sufficient evidence to exculpate itself from the inference of negligence naturally arising. This burden has not been met.