## JOHNSON v. BALTIMORE & O. R. CO.

### Civ. No. 8409.

United States District Court,
W. D. Pennsylvania.

June 20, 1952.

Paul J. McArdle, and John Duggan, Jr., Pittsburgh, Pa., for plaintiff.

Marvin D. Power, of the law firm of Margiotti & Casey, Pittsburgh, Pa., for defendant.

MARSH, District Judge.

This is an action for the wrongful death of one George Johnson brought by the administratrix of his estate under the Survival Act.[1] At the first trial the jury was unable to reach a verdict and was discharged. The result of the second trial was a verdict in favor of the plaintiff in the amount of $10,-000. Defendant filed a motion for judgment and for a new trial.

We are of the opinion that judgment for the defendant should be refused, but that a new trial should be granted on the issue of damages alone, as permitted by Rule 59(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

The evidence discloses that George Johnson made his home with his sister, Loretta Tompkins, at the village of Rosedale, which is about two and one half miles from Uniontown. He was about thirty-five years old and was employed as a porter. He was shot to death on January 12, 1949, by Clyde Hall, a detective employed by the defendant. From the evidence the jury could have found that Johnson, while at a grade crossing near Rosedale, was mistaken for a trespasser by Hall.

Plaintiff called Hall as her witness. He testified that he had been assigned by defendant to apprehend persons who were illegally riding on the freight trains of defendant and stopping them by opening an angle cock.[2] After dark on the aforesaid date he saw a man, who he believed was decedent, riding on a freight train and, from this man's position in relation to an angle cock, the witness concluded that he was illegally stopping the train. As soon as the train stopped the detective crawled between the cars and attempted to arrest the decedent who fled several hundred yards into a field. During the chase Hall fired his revolver in the air several times and ordered him to halt in the name of the law. Eventually decedent did stop and, according to Hall, violently and viciously resisted the officer's attempt to handcuff him. In the melee, Hall claimed that he was stunned and knocked to the ground by a blow on the mouth; when he regained his senses he was lying on his back on the ground, and his assailant was astride his thighs with an open knife in his raised right hand. The officer concluded that he was about to be killed and testified that he transferred the revolver from his left hand to his right hand and shot the decedent in self-defense. Why the revolver was not taken by decedent while the officer was senseless is inexplicable.

There was evidence that Hall was cut in several places about the scalp, chest, face and back.[3] The detective was dressed in overalls and a jacket. No badge of office was visible.

Defendant urges that since the testimony of the manner in which the shooting occurred was uncontradicted, plaintiff is bound by that testimony. Plaintiff argues that this testimony proves that Hall was the employee of defendant acting in the scope of his employment; that he deliberately shot decedent and that the exculpatory part of the shooting was inherently improbable; that it shows that the officer used excessive force and that the killing was not justifiable.

To sustain its contention that plaintiff is bound by the detective's testimony, defendant cites Howard v. Swagart, 1947, 82 U.S. App.D.C. 147, 161 F.2d 651, 656. In that case, however, the plaintiff *"ignores"* the *testimony of her witness and "attempts to discredit"* it *"and shape it into an unwarranted conclusion on the part of the jury"*. (Emphasis supplied). In the situation here, plaintiff asserts the jury drew a *warranted conclusion* from the detective's testimony.

1. Section 2, Act of July 2, 1937, P.L. 2755, 20 P.S.Pa. c. 3, Appendix, § 772.

2. The court instructed the jury that opening an angle cock was a felony under the Pennsylvania Criminal Code, 1939, P.L. 872, § 919, 18 P.S.Pa. § 4919.

3. The inference is that the decedent cut Hall in these places while the latter was senseless.

■ Although the court would have reached a different verdict, we hold that it was for the jury not only to evaluate the testimony of the officer, but to reach the ultimate conclusions of fact under all the circumstances of the case. As we held before,[4] we do not believe plaintiff is bound by the adverse testimony, opinions or conclusions of the witness Hall,[5] nor do we find that his testimony is so inherently probable that the jury should not have been permitted to pass upon it. As we previously remarked, the jury might have accepted Hall's admissions and declarations that he shot decedent while acting in the scope of his employment; it could have found that the decedent was an innocent bystander and was justified in resisting arrest, and that the force used in so doing was no more than was necessary under the circumstances; it could have completely rejected Hall's protestations that he killed decedent justifiably in self-defense; it could have found that the officer used excessive force in trying to make the arrest; it might have believed part of Hall's testimony and rejected part of it.

■ The fact that plaintiff has called the defendant's employee to the witness stand, the only living eyewitness to the shooting, without stating that she called him as for cross-examination pursuant to Rule 43(b), Federal Rules of Civil Procedure, 28 U.S.C.A., does not necessarily bind her to the inferences and conclusions of fact favorable to the defendant. The issues of whether the conduct of the officer was tortious or not depend upon the facts found which are matters within the exclusive province of the jury. As Judge Goodrich

said in Moran v. Pittsburgh-Des Moines Steel Co., supra, it seems to us that any statement to the effect that a party is bound by the testimony of a witness whom he is free to contradict and impeach is inherently anomalous. Accordingly, defendant's motion for judgment will be denied.

■ On the question of damages, however, we are of the opinion that plaintiff failed to adequately prove the elements which would have permitted the jury to properly assess damages. The parties stipulated that decedent earned $100 per month. Under the Pennsylvania Survival Act as interpreted in Murray v. Philadelphia Transportation Co., 1948, 359 Pa. 69, 58 A.2d 323, plaintiff must adduce evidence which would indicate what the decedent would have accumulated had he not died as the result of the tortious conduct of defendant's employee.[6] At best, such damages are difficult for the jury to accurately determine. But where, as here, *there is no evidence of* the cost of decedent's maintenance, the damages awarded by the jury can only be the result of sheer speculation and conjecture. We instructed the jury to deduct from any award the amount they might find decedent would have spent on himself. Upon a review of the record, however, we find there is no evidence which the jury could use as a guide in determining the amount to deduct from the award.

Plaintiff urges that the burden is upon the defendant to minimize damages and to show the cost of decedent's maintenance.[7] With this contention we cannot agree. The probable cost of decedent's maintenance is part of the plaintiff's burden of proof in

---

4. Opinion denying defendant's motion for judgment on the whole record under Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A., filed January 25, 1952, after first trial.

5. See: Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1950, 183 F.2d 467. Although Hall was cleared by a coroner's jury and was not prosecuted criminally, we believe he is to be classed as an unwilling witness since it is but natural that he would be reluctant to confess the use of excessive force or an unjustifiable killing

6. See Pilipovich v. Pittsburgh Coal Co., 1934, 314 Pa. 585, 172 A. 136, and McHugh v. Schlosser, 1894, 159 Pa. 480, 28 A. 291, 23 L.R.A. 574, which held that under the Wrongful Death Act, 12 P.S.Pa. § 1601 et seq., plaintiff was required to prove decedent's cost of maintenance. We believe the plaintiff has the same burden of proof in a case brought under the Survival Act.

7. Plaintiff has not cited any cases in support of this contention.

order to establish the damages to which she is entitled.

■ We, therefore, will grant a new trial on the issue of damages. An order will be entered in conformity with this opinion.