Hazel **KOWTKO**, Administratrix of the Estate of George Kowtko, Deceased, and Hazel Kowtko, in her own right, Plaintiff,

v.

The **DELAWARE AND HUDSON RAIL-ROAD CORPORATION**, Defendant.

Civ. A. No. 4104.

United States District Court
M. D. Pennsylvania.

April 6, 1955.

Frank J. McDonnell, Paul A. McGlone, Scranton, Pa., for plaintiff.

Paul Bedford, S. Keene Mitchell, Jr., Michael H. Sheridan, Wilkes-Barre, Pa., for defendant.

JOHN W. MURPHY, District Judge.

Plaintiff of Pennsylvania in her own right and as administratrix of the estate of George Kowtko, deceased, brought this action under the Pennsylvania Wrongful Death [1] and Survival Acts,[2] to recover damages from defendant railroad, a New York corporation, for the death of her son, George Kowtko, caused by defendant's negligence in a grade crossing accident in this district. The jury returned a verdict for plaintiff in

---

[1]. Act of April 15, 1851, P.L. 669, § 19, as amended by the Act of April 26, 1855, P.L. 309, §§ 1 and 2. Act of May 13, 1927, P.L. 992, § 1, 12 P.S.Pa. §§ 1601–1604. (Act of June 7, 1911, P.L. 678, § 1, and April 1, 1937, P.L. 196, § 1, are not herein pertinent.)

As to the proper party plaintiff, see Suders v. Campbell, D.C.M.D.Pa.1947, 73 F.Supp. 112; Pa. Rules of Civil Procedure, 12 P.S.Appendix, Rules 2201, 2202 (b), 2204, 2205, 2206(b). Cf. McFadden v. May, 1937, 325 Pa. 145, at page 153,

189 A. 483; Kaczorowski v. Kalkosinski, 321 Pa. 438, at pages 442, 444, 445, 184 A. 663, 104 A.L.R. 1267; Goodrich-Amram Pa. Civil Practice, §§ 2201–15 and 16, and footnote 13, in re Act of April 4, 1868, P.L. 58, § 2.

[2]. Act of April 18, 1949, P.L. 512, Art. VI, §§ 601, 603, 20 P.S.Pa. §§ 320.601, 320.603, based upon the Act of June 7, 1917, P.L. 447, § 35(b) and see Act of July 2, 1937, P.L. 2755, § 2; 20 P.S.Pa. Ch. 3, Appendix, § 772.

98

her own right, $15,000; as administra-trix, $35,000.[3] Defendant moves to set aside the verdict and for judgment in its favor and in the alternative for a new trial.[4]

Diversity of citizenship and the requisite amount in controversy being the sole basis of jurisdiction, the substantive law of Pennsylvania is controlling as to the rights and obligations of the parties.[5] The proper function of the Federal Court is to ascertain what the state law is, not what it ought to be.[6]

Viewing the facts, including all inferences reasonably deducible therefrom in the light most favorable to the verdict,[7] it appears that about 4:10 P.M. on a day in March, George Kowtko drove his Pontiac sedan automobile north on South Valley Avenue in the Borough of Olyphant and westward to the point where the avenue crosses defendant's four tracks—a busy urban crossing. There was a light snow falling, the sky overcast, the air misty, the asphalt pavement and the wooden planked crossing wet. A long-time resident of the borough and familiar with the crossing, Kowtko stopped his car about 15 to 20 feet east of the crossing (—on plaintiff's Ex. 6), the usual place of stopping. From that point there was a 4.3% downgrade toward defendant's tracks. The view to the north [8] was about 200 feet diagonally—158 feet north of the crossing; any further view being obstructed by the contour and topography of the land, an embankment, the gateman's tower located on the northeast side of the crossing, a Hudson Coal Company mine sign, a fence, fence posts, bushes, and concrete cribbing along defendant's

3. And answers to eleven interrogatories submitted at defendant's request over plaintiff's objection. See Fed.Rules Civ. Proc. rule 49(b), 28 U.S.C.A.; Biggans v. Hajoca Corp., 3 Cir., 1950, 185 F.2d 982; Skidmore v. Baltimore & O. R. Co., 2 Cir., 1948, 167 F.2d 54, certiorari denied 335 U.S. 816, 69 S.Ct. 34, 93 L.Ed. 371.

4. Defendant's motion to dismiss at the close of plaintiff's case, Rule 41(b), was denied; ruling reserved on defendant's motion for directed verdict, Rule 50(b), at the close of all the evidence. As to the motion for new trial, see Rule 59(a) (1).

5. Johnson v. Baltimore & O. R. Co., 3 Cir., 1953, 208 F.2d 633; Burns v. Goldberg, 3 Cir.1954, 210 F.2d 646, at page 647. It is not our function to examine the correctness of decisions. Klages v. Cohen, 2 Cir., 1945, 146 F.2d 641, at page 644. " * * * Our duty is to apply state law as we find it in the state decisions irrespective of what we may regard as its merits. * * *" Krauss v. Greenbarg, 3 Cir., 1943, 137 F.2d 569, at page 571, and see Kerrigan's Estate v. Joseph E. Seagram & Sons, Inc., 3 Cir., 1952, 199 F.2d 694, 697, to apply the law as the state court has declared it.

6. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, at page 496, 61 S.Ct. 1020, at page 1021, 85 L.Ed. 1477, "Any other ruling would do violence to the principle of unformity within a state upon which the Tompkins decision [Erie R. Co. v. Tompkins, 1938, 304 U.S. 64,

at page 78, 58 S.Ct. 817, at page 822, 82 L.Ed. 1188, 114 A.L.R. 1487] is based." In diversity cases a federal court is " * * * another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State * * *. In essence, the intent of that decision was to insure that * * * the outcome * * * in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation * * *." Guaranty Trust Co. of New York v. York, 326 U.S. 99, at pages 108, 109, 65 S.Ct. 1464, at page 1469, 89 L.Ed. 2079, 160 A.L.R. 1231; Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 555, 69 S.Ct. 1221, 1230, 93 L.Ed. 1528. In a diversity case a federal court administers the state system of law " * * * in all except details related to its own conduct of business."

7. Cheffey v. Pennsylvania R. Co., D.C.E.D. Pa.1948, 79 F.Supp. 252, 254; Eckenrode v. Pennsylvania R. Co., 3 Cir., 1947, 164 F.2d 996, at page 997. The weight to be attached to the jury's findings becomes the greater when backed up by specific findings upon interrogatories submitted at the trial; see id., affirmed 335 U.S. 329, 69 S.Ct. 91, 93 L.Ed. 41; Meade v. Pennsylvania R. Co., 1953, 375 Pa. 325, at page 329, 100 A.2d 612.

8. Plaintiff's Exs. 6, 7. Defendant's Exs. 1, 2.

right of way. The jury had a view of the locus in quo. A full view to the north was not available until one had passed defendant's first or siding track.[9]

About that time there was traffic on a narrow gauge mine track which intersected the avenue to Kowtko's rear, a train stopped south of the crossing on defendant's first track, an automobile driven by one Preschutti some 8 to 10 feet ahead of Kowtko about to traverse the crossing. Having stopped, looked and listened, the gates being in a raised position, Kowtko proceeded at 5 to 10 miles an hour carefully [10] across defendant's tracks. In a few seconds, as the car reached the fourth track, it was struck by the head diesel unit of one of defendant's southbound freight trains,[11] traveling at the moment 50 miles per hour,[12] hurled into the air onto defendant's northbound track, rolled end to end three times, coming to rest some 70 to 75 feet from the point of contact. The automobile was demolished. The head end of the train came to a stop 1,400 to 1,500 feet below the crossing. As a result of the injuries sustained Kowtko was rendered unconscious and died within ten minutes after the collision.

9. Cf. Plaintiff's Ex. 8; defendant's Exs. 3, 4, and 5.

10. See and cf. Aiken v. Pennsylvania R. Co., 130 Pa. 380, 18 A. 619; Ihrig v. Erie R. Co., 210 Pa. 98, at page 100, 59 A. 686; Baltimore & Ohio R. Co. v. Muldoon, 3 Cir., 1939, 102 F.2d 151, at page 152; Baltimore & Ohio R. Co. v. Goodman, 1927, 275 U.S. 66, at page 70, 48 S. Ct. 24, 72 L.Ed. 167; Pfendler v. Speer, 1936, 323 Pa. 443, at page 446, 185 A. 618; Moses v. Northwestern Pennsylvania R. Co., 1917, 258 Pa. 537, at page 541, 102 A. 166. Unless it affirmatively appears by undisputed evidence that the stopping place was an improper one the question is for the jury. Hamilton v. Philadelphia, B. & W. R. Co., 1916, 252 Pa. 615, at page 617, 97 A. 850. The presumption of due care by one who meets death in an accident, Travis v. Pennsylvania R. Co., 1954, 377 Pa. 537, at page 541, 105 A.2d 131, is greatly strengthened where there is testimony that he stopped, looked and listened before crossing. Harris v. Reading Co., 325 Pa. 296, at page 301, 189 A. 337, and see Cinquina v. Philadelphia Transportation Co., 1949, 362 Pa. 564, at page 550, 67 A.2d 109.

Bush v. Philadelphia & Reading R. Co., 232 Pa. 327, at pages 328, 329, 81 A. 409: "Whether he stopped a sufficient length of time to inform himself of conditions, and * * * advanced with due caution from that point, were * * * to be determined, not by hard and fast rules of positive duty * * * but by the jury upon a consideration of all the circumstances * * * not the least * * * of which was * * * that the time required to pass. from the place where the * * * collision occurred was but three or four seconds at most, and that through open gates implying to the ordinary traveler an invitation to advance * * *. The law * * * is so clearly expressed in Ely v. [Pittsburgh C., C. & St. L.] Railway Co., 158 Pa. 233, 27 A. 970 * * * that no other citation * * * is required."

Cohen v. Philadelphia & Reading R. Co., 1905, 211 Pa. 227, at page 231, 60 A. 729, at page 730, "He was upon a crossing where he had a right to be * * *" Id., 211 Pa. at page 233, 60 A. at page 731: "The deceased was invited upon the tracks * * * the raised * * * gates * * * 'dulled the edge of his caution'." Johnson v. Director General of Railroads, 1924, 278 Pa. 491, at page 494, 123 A. 484, 485. "Although plaintiff was not thereby relieved from the duty to observe reasonable care, the opening of the gates constituted an intimation that the tracks were free of approaching trains, and implied an invitation to * * * proceed." And see Id., as to the duty of the gateman. Sharpless v. Delaware L. & W. R. Co., 1926, 286 Pa. 439, at page 443, 133 A. 636, at page 637, the traveler "* * * could rest in the assurance that, if a train was approaching, the gates would be lowered and, if they were not, that it was safe to proceed." Hamilton v. Philadelphia B. & W. R. Co., supra, 252 Pa. at page 618, 97 A. 850; Rosenfield v. Lehigh Valley R. Co., 113 Pa.Super. 424, 173 A. 476; 44 Am.Jur. Tit. Railroads, § 564, p. 818.

11. Three diesel units, ninety-six loaded cars, nine empties, and a caboose.

12. See Solomon v. Lehigh Valley R. Co., 1945, 351 Pa. 302, at page 305, 41 A.2d 664, at page 665, as to need of "evidence of special circumstances that renders such speed excessive."

Three witnesses [13] in the vicinity at the time, (a) one on the small-gauge track on South Valley Avenue, (b) another on a six-foot embankment northeast of the crossing, and (c) Preschutti, testified that they had heard no whistle or bell or other signal sounded before the accident.

Immediately southwest of defendant's crossing Lafayette Street turns rather abruptly northeasterly toward defendant's tracks onto a wooden planked part of defendant's crossing.[14]

There were gates on the east and west side and a separate gate for traffic on Lafayette Street. The gates were controlled by separate levers in the gateman's tower; raised and lowered by a manually operated four foot long pump handle, the raising or lowering operation respectively requiring about sixteen seconds. Just before the collision one Koslab, a farmer, drove his truck north on Lafayette Street and, the gates being up, passed the point where the gates would normally come down. After stopping to let South Valley Avenue traffic, pedestrian and vehicular, pass, he shifted into low gear and was about to proceed onto the crossing when he noticed defendant's train some 50 to 75 feet away. (See defendant's Ex. 9). He stepped on his brake; the truck was "jumping". As the train passed by the front end of the truck was only a few feet away. Defendant's engineer testified that he sounded his bell and whistle for another crossing 1,000 to 1,200 feet to the north; when the train was 750 feet from the South Valley Avenue crossing, seeing the truck in danger (see view defendant's Ex. 6, 175 feet; plaintiff's Ex. 9, 100 feet), he sounded his whistle (the usual crossing signal), the bell was ringing, and repeated the signal at 500 feet. He then sounded short sharp whistles and when the train was 50 feet from crossing put the brakes into emergency position. After the emergency brakes were applied the train went over the crossing at 40 miles per hour. From his position on the right 30 feet from the head end, he did not see either of the two cars on the crossing. The fireman on the left side heard the whistle repeated,[15]

---

13. (a) Cruciani, a plumbing and heating contractor (see X on plaintiff's Ex. 10); Kowtko stopped his car before crossing, the gates were up; the train first came into the witness' view 15 feet north of Kowtko's car. Living near a crossing he was used to hearing such signals. Although he had a mastoid operation and had some difficulty in hearing at heights and indoors, he insisted his hearing was good when out of doors. (b) (See X on the right side of plaintiff's Ex. 11); saw the train coming and the cars proceeding over the crossing. (c) "When I got on the third track I noticed this train coming down * * * the way the weather was, I would say maybe one hundred feet at the furthest—maybe fifty feet at the most * * * cleared * * * fourth track * * * few (2 or 3) seconds * * * heard concussion * * *." Heard no signals when driving over the crossing; his car windows were closed; the radio playing. See Anstine v. Pennsylvania R. Co., 1941, 342 Pa. 423, 428, 20 A.2d 774; see and cf. Costack v. Pennsylvania R. Co., 1954, 376 Pa. 341, at pages 351, 355, 102 A.2d 127, and see dissent; Kindt v. Reading Co., 1945, 352 Pa. 419, at page 424, 43 A.2d 145, 162 A. L.R. 1; Travis v. Pennsylvania R. Co.,

1954, 377 Pa. 537, at page 539 et seq., 105 A.2d 131; and cf. Peruzzi v. Pennsylvania R. Co., 1930, 99 Pa.Super. 519, at page 522. In the instant case apparently no signal was given when it was most needed, i. e., after the gates were raised; and see Amey v. Erb, 1929, 296 Pa. 561, at page 565, 146 A. 141, where one finds himself in a position of danger which is not the result of his negligence, he is not responsible if he makes a mistake of judgment in getting out. Cf. Smith v. Gross, 1934, 113 Pa.Super. 568, at page 571, 173 A. 478; Casey v. Siciliano, 310 Pa. 238, at page 241, 165 A. 1; Luks v. American Ice Co., 267 Pa. 337, at page 343, 109 A. 680, as to the defendant and the emergency doctrine.

14. Defendant's Exs. 1, 3, 9, 10, 11. Plaintiff's Exs. 2, 6, 9, 10, 11.

15. The head trainman on the left side of the second diesel unit heard "him blow the whistle", but did not hear the bell. Just as he heard the whistle "toots" he looked and saw the collision. The middle man on the right side of the second diesel unit, looking back over the train, heard the crossing and short whistle sounds, not the bell.

the bell ringing; right after the brakes were applied he saw the two cars coming onto the crossing, observed that one car just passed, the other was struck by the engine.

When the train was 1,000 to 1,200 feet north of the crossing the gateman, a fairly new hand at the job, lowered one set of gates, i. e., the northeast and southwest gates on South Valley Avenue (see × on defendant's Ex. 1). When the train was 250 feet from the crossing he was leaning out the tower window blowing a police whistle and waving his arms to attract the truck driver's attention. When the train was "very, very close" to the crossing, excited, he raised the gates purportedly to help the truck driver, but actually of no help at all, and in doing so invited traffic to use the crossing, of course, with due care under the circumstances but with a sense of caution dulled by the apparent indication that the crossing was open for use by vehicular traffic. After the accident the two sets of gates east and west, not the Lafayette Street gate, were lowered.

The gateman never saw Kowtko's car until after it was struck and did not know where it came from. (Cf. defendant's Exs. 10 and 11).

Whether under the circumstances: adequate and timely signals were given—especially after the gates were raised; there was excessive speed; the train was under proper control and was handled with care; there was negligence in not lowering all the gates; in raising the gates which could not possibly help the situation and actually created more danger, and finally whether or not in view of the presumption of care, because of the death of Kowtko and the place of the accident, the defendant was negligent or plaintiff's decedent free from contributory negligence, were all questions for the jury.[16] The verdict and answers to interrogatories were in plaintiff's favor.[17] There was substantial competent evidence to support the verdict.[18] Defendant's motion to set aside the verdict and for judgment in its favor will therefore be denied.

16. As to negligence see Tiller v. Atlantic Coast Line R. Co., 1943, 318 U.S. 54, at page 67, 63 S.Ct. 444, 87 L.Ed. 610; Baker v. Pennsylvania R. Co., 1952, 369 Pa. 413, at pages 417, 418, 419, 85 A.2d 416, at page 419, "where a traveller stops, looks and listens before entering upon a grade crossing and, neither seeing or hearing anything approaching on the tracks, proceeds and is thereafter struck by a train on a track beyond the first, the question of his contributory negligence is for the jury." And Id., 369 Pa. at page 420, 85 A.2d at page 419, "* * * having once stopped in the exercise of reasonable care before entering upon the crossing, he was not bound, as a matter of law, to stop again on or between the tracks to look and listen." Weiss v. Pittsburgh Rys. Co., 1930, 301 Pa. 539, 543, 152 A. 674; Altomari v. Kruger, 1937, 325 Pa. 235, 238–239, 188 A. 828; MacDonald v. Pennsylvania R. Co., 348 Pa. 558, 564, 36 A.2d 492; cf. Jursic v. Pittsburgh & Lake Erie R. Co., 1954, 376 Pa. 142, at pages 149–151, 102 A.2d 150, and Ramsey v. Baltimore & Ohio R. Co., 1939, 336 Pa. 498, at pages 500, 501, 9 A.2d 348, but see Sanders

v. Pennsylvania R. Co., 1939, 336 Pa. 424, at pages 426, 427, 9 A.2d 413.

17. Decedent was not negligent, (1), (2), (3); came to a full stop at the usual stopping place before entering the crossing (9); defendant, approaching at an excessive speed (5), did not give timely and adequate warning of the approach of the train (4); the truck driver was not in danger of impending peril (6); the gateman did not act to protect the truck driver and his passenger from peril (7), and did not use judgment arising from peril under the circumstances (8); George Kowtko left a widow who was still living (10) and (11).
    See Eckenrode v. Pennsylvania R. Co., supra, 164 F.2d 997; Cate v. Good Bros., 3 Cir., 1950, 181 F.2d 146, at page 149; Pardee v. Aldridge, 1903, 189 U.S. 429, at page 433, 23 S.Ct. 514, 47 L.Ed. 883.

18. Kulka v. Nemirovsky, 1934, 314 Pa. 134, at page 138, 170 A. 261; Kimmel v. Yankee Lines, Inc., D.C., 125 F.Supp. 702, at page 704; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, at page 35, 64 S.Ct. 409, 88 L.Ed. 520; Hawk v. Olson, 1945, 326 U.S. 271, at page 279, 66 S.Ct. 116, 90 L.Ed. 61.

In its motion for a new trial [19] defendant asserts the verdict was excessive; inadequacy of proof of cost of decedent's maintenance, and of contributions by plaintiff to the decedent; that gratuity subsistence payments to George Kowtko by the Veterans Administration did not constitute earnings; error in our instructions as to the possible measure of damages.

Decedent was twenty-nine years ten months of age at the time of his death. At twenty-one he was inducted into the United States Army and at some time during thirty-eight months of military service had an occupational specialty of Movie Projectionist 137. Within four months after his military service terminated and until the time of his death he was employed steadily and worked regularly at the Billig Shoe Company, in what capacity was not shown. His average monthly earnings for the year previous to his death were $174.13, and for the four months immediately prior to his death $174.44. While there was no evidence as to the extent of earlier school attendance the decedent was enrolled and attended night school under Public Law 346, Veterans' Regulation No. 1(A), pt. 8, 38 U.S.C.A. following section 745, in training in the Industrial Sewing Machine and Repair School from July 18, 1949, to July 23, 1950; from November 15, 1950, to March 16, 1951, he was in training as an automobile mechanic at the Mid-Valley Vocational School. As a veteran he received $70 per month subsistence allowance from the Veterans Administration and was entitled at the time of his death to two years, eight months, and eleven days additional training and subsistence allowance, (ten months, seven days at the time of trial). Public Law 512, Veterans' Regulation No. 1(A) pt. 8, subd. 6(a), established a ceiling of $210 per month including regular earnings plus the subsistence allowance.

Upon returning from military service he lived for eleven months with his mother [20] in her seven-room home on Grant Street in the area of the accident. Thereafter he and his wife, whom he married while in the service, lived with the mother for seven months and then moved to an apartment on Park Street where they lived together for two years. After signing a separation agreement and waiver of support and property rights, his wife returned to Scotland.[21] He then returned to live with his mother. The mother testified that he turned his entire pay from the shoe factory, $174.44 monthly, over to her; the $70 subsistence allowance he kept for himself to "buy clothes * * * pay (his) expenses * * * pay bills for the car". She used his salary to provide badly needed repairs for the house, pay taxes, utilities, coal and water bills and to purchase food and run the home.

Decedent paid $2,400, saved largely from his subsistence allowance, for a Pontiac car, $400 of which was given to him by his mother from the salary he had turned over to her.

19. Defendant withdrew reasons 2, 3, 7, 8. As to the applicable tests, see Cheffey v. Pennsylvania R. Co., supra, 79 F. Supp. at page 259; Magee v. General Motors Corpn., 3 Cir., 1954, 213 F.2d 899, at page 900.

20. A widow; the other four adult members of the family lived elsewhere; decedent alone contributed to her support.

21. Whether she thereby or in separate negotiations with defendant company released any claim she may have to share in the verdict will be more pertinent at the time of distribution. See McFadden v. May, and Kaczorowski v. Kalkosinski, supra, note 1, and Pantazis v. Fidelity and Deposit Company of Maryland, 1952, 369 Pa. 221, at page 225, 85 A.2d 421; Minkin v. Minkin, 1939, 336 Pa. 49, at pages 52, 53, 7 A.2d 461. Cf. Huntingdon & Broad Top M. R. & Coal Co. v. Decker, 1877, 84 Pa. 419; Miller v. Pennsylvania R. Co., 1917, 256 Pa. 142, 100 A. 654, with Vogelgesang Est. 1952 (Pa.) 48 Schuyl. 91; Armstrong v. Berk, D.C.E.D.Pa.1951, 96 F.Supp. 182; Ditkosky v. Schreiber Trucking Co., 1951, 82 Pa. Dist. & Co. 319; Poff v. Pennsylvania R. Co., 327 U.S. 399, 66 S.Ct. 603, 90 L.Ed. 749.

There was testimony that decedent had good habits and a good reputation; that he was sober, thrifty and industrious; strong and healthy, and a steady worker. From its visit to the scene and through exhibits and other evidence at the trial, the jury had a picture of the manner of plaintiff's dress and appearance, and of the neighborhood in which the plaintiff and decedent lived. It was agreed that, according to the mortality tables, decedent's life expectancy at the time of death was thirty-eight years. Defendant contends that there was no evidence of cost of deceased's maintenance or of the value of contributions plaintiff would be expected to make to or on behalf of her son if his death had not occurred, and that therefore the question of damages was at best a matter of conjecture and speculation.

At the time of trial: Plaintiff was sixty-two years of age, apparently in good health; damages to the car were $1,950; the funeral bill paid by plaintiff $840.61; loss of decedent's wages and subsistence to date of trial $4,988.64.[22]

[11, 12] Having decided that plaintiff was entitled to recover, the jury had the duty of awarding fair and reasonable compensation, not punishment, under each cause of action without any duplication of damages. Plaintiff was entitled (a) in her own right to recover under the Death Act the pecuniary loss she sustained by reason of her son's death measured by the present worth [23] of the amount she probably would have received for her support,[24] while the family relationship continued between them, from his likely earnings and services during the period of his life expectancy,[25] without any allowance for pain or suffering by the deceased, or mental suffering, grief, despair, disappointed hopes or loss of decedent's companionship by the plaintiff as mother; (b) as administratrix on behalf of decedent's estate under the Survival Act the pecuniary loss occasioned to decedent and therefore to his estate by defendant's tortious conduct measured by the present worth of his likely earnings and services during the period of his life expectancy,

22. There was no evidence or claim for medical, surgical, nursing, hospital or other expenses. Act of May 13, 1927, supra. Reasonable funeral expenses are allowable only under the Death Act. See Radobersky v. Imperial Volunteer Fire Dept., 1951, 368 Pa. 235, at page 243, 81 A.2d 865.

23. "* * * to a sum which if paid on the date of the verdict would then be a just cash equivalent of the sum total of such lost future contributions." Vescio v. Pennsylvania Electric Co., supra, 336 Pa. at page 511, 9 A.2d at page 551. "* * * the value of a lump sum received to-day is much greater than the value of * * * smaller sums of equal total amount received over a long period of time. * * * a sum sufficient to provide from interest alone the amount of the estimated annual decrease in earning power would be grossly excessive, since the entire capital would remain unimpaired at the date of the plaintiff's decease, whereas * * * it is supposed to be absorbed by the annual payments." McCaffrey v. Schwartz, 1926, 285 Pa. 561, at page 570, 132 A. 810, at page 813; Pezzulli v. D'Ambrosia, supra, 344 Pa. at page 649, 26 A.2d 659; Mars v. Mead-

ville Tel. Co., 1942, 344 Pa. 29, at pages 33, 34, 23 A.2d 856; Rowles v. Evanuik, 1944, 350 Pa. 64, at pages 71, 72, 38 A.2d 255; Littman v. Bell Tel. Co. of Pennsylvania, 1934, 315 Pa. 370, at page 377, 172 A. 687; and see Vicksburg & Meridian R. Co. v. Putnam, 1886, 118 U.S. 545, at page 551, 7 S.Ct. 1, 30 L.Ed. 257; Chesapeake & O. R. Co. v. Kelly, 1916, 241 U.S. 485, at page 489, 36 S.Ct. 630, 60 L.Ed. 1117; Rosenal v. United States, D.C., 94 F.Supp. 1004; cf. Wiest v. Electric Traction Co., 1901, 200 Pa. 148, at page 151, 49 A. 891, 58 L.R.A. 666; 16 Am.Jur. Death, § 194.

24. Since he turned over his whole pay from the shoe factory to his mother, the result would be determined by deducting therefrom the value of contributions she would have been expected to make for her son's benefit, i.e., board, lodging, etc. Gaydos v. Domabyl, 1930, supra, 301 Pa. at page 533, 152 A. 549.

25. McCaffrey v. Schwartz, supra, 285 Pa. at page 575, 132 A. 810; Littman v. Bell Tel. Co. of Pennsylvania, supra, 315 Pa. at page 375, 172 A. 687; Kerrigan v. Pennsylvania R. Co., 194 Pa. 98, at page 106, 44 A. 1069.

diminished by the amount he would likely have provided for his mother [26] and by the probable cost of his own maintenance and incidental expenses [27] during the time he would likely have lived but for the accident. Gaydos v. Domabyl, supra, 301 Pa. at pages 530, 531, 152 A. 549; Pezzulli v. D'Ambrosia, 1942, 344 Pa. 643, 650, 26 A.2d 659; Murray v. Philadelphia Transportation Co., 1948, 359 Pa. 69, at pages 73, 74, 58 A.2d 323; Ferne v. Chadderton, 1949, 363 Pa. 191, at pages 197, 198, 69 A.2d 104;[28] Cunningham v. Spangler, 1936, 123 Pa.Super. 151, at page 161, 186 A. 173.

■■■ It was the duty of the jury to, consider, in arriving at a verdict, the age of the mother, how long she would be likely to live, and whether or not her son would continue to support her during her life's duration. It also had the right to consider whether he might become reconciled with his wife or remarry, thereby diminishing his ability to support his mother. Vescio v. Pennsylvania Electric Co., 336 Pa. 502, at page 511, 9 A.2d 546.

Speaking of the necessity of deducting the cost of decedent's maintenance, Murray v. Philadelphia Transportation Co., supra, 359 Pa. at page 74, 58 A.2d at page 325, adds " * * * as shown by the evidence * * *." Defendant argues and cites in support thereof Johnson v. Baltimore & O. R. Co., D.C.W.D. Pa., 1952, 106 F.Supp. 166, at page 168, Marsh, J., McHugh v. Schlosser, 1894, 159 Pa. 480, at page 486, 28 A. 291, 23 A.L.R. 574, Pilipovich v. Pittsburgh Coal Co., 1934, 314 Pa. 585, 172 A. 136, that there was no evidence of cost of maintenance of decedent, or the value of contributions by the plaintiff to deceased and that in the absence thereof the net

result was pure guess, speculation or conjecture, and that the award should fall pro tanto.

In Johnson v. Baltimore & O. R. Co., supra, 106 F.Supp. 166, the only evidence was a stipulation as to monthly earnings; but see Patton, v. Baltimore & O. R. Co., D.C., 120 F.Supp. 659, at pages 665, 666. In McHugh v. Schlosser, supra, 159 Pa. at page 486, 28 A. 291, there was no evidence tending to show the earning power of the deceased or of business, business habits and past earnings, to afford any basis from which his earning capacity could be fairly estimated. In Pilipovich v. Pittsburgh Coal Co., supra, 314 Pa. at page 592, 172 A. 136, there was no proof as to the amount of the earnings or earning power of the deceased or the value of contributions to his family.

■■■ It is elementary that compensatory damages cannot be allowed unless there is satisfactory evidence to support them. Pilipovich v. Pittsburgh Coal Co., supra, 314 Pa. at page 591, 172 A. 136; Endler v. United States, D.C., 101 F. Supp. 332, at page 334; but see Rowles v. Evanuik, supra, 350 Pa. at page 70, 38 A.2d at page 258, "The degree of proof in such cases must vary", and cf. Ginocchi v. Pittsburgh & Lake Erie R. Co., 283 Pa. 378, at page 380, 129 A. 323, " * * * much reliance must be placed on the knowledge and common sense of juries acquired through the experiences of life. ("To which we * * * add * * * the sound, conservative judgment of the trial judge." Krasowski v. White Star Lines, Inc., 1932, 307 Pa. 470, at page 472, 162 A. 200, at page 201.) They know quite as much concerning the matter as the witnesses called to testify." Ginocchi v. Pittsburgh &

---

26. See note 24, supra. There being no claim for or any evidence of loss of wages, or pain and suffering prior to decedent's death. As to the latter, see 16 Am. Jur. Death, § 191; New Orleans & N. E. R. Co. v. Harris, 247 U.S. 367, at page 372, 38 S.Ct. 535, 62 L.Ed. 1167; Burns v. Goldberg, 3 Cir. 1954, 210 F.2d 646, at page 648; also see Groves v. McNeil, 1910, 226 Pa. 345, at page 347, 75 A. 600.

27. Glaseo v. Green, 1922, 273 Pa. 353, at page 358, 117 A. 79.

28. Cf. Radobersky v. Imperial Volunteer Fire Dept., supra, 368 Pa. at page 242, 81 A.2d at page 868, "net earning power" and see First Nat'l Bank in Greensburg v. M. & G. Convoy, Inc., D.C., 106 F. Supp. 261.

Lake Erie R. Co., 283 Pa. at page 381, 129 A. 323, at page 324, "All that a trial judge can do is to state clearly the true ground of recovery, limiting it to the probable pecuniary loss, and pointing out the elements to be considered, and to permit no excessive verdict to stand." McCleary v. Pittsburgh Rys. Co., 1911, 47 Pa.Super. 366, at pages 369–371, " * * * the statute is silent as to the intrinsic nature of the 'damages' to be recovered, the measure by which their amount is to be ascertained and the character of the evidence by which that measure is to be established * * * the law requires the production of the best evidence available.". Id., 47 Pa.Super. at page 372, and see Id., 47 Pa.Super. at pages 373, 375; Loughran v. Thomas Bros. Co., 1916, 65 Pa.Super. 302, at pages 305, 307.[29]

■■ While plaintiff's case would be stronger if there was specific evidence as to the cost of board and lodging, it would in all probability be an estimate since records of such items are in many instances not kept or maintained, and the amount thereof may vary considerably with any change of circumstances in the future.[30] Based upon the foregoing, together with evidence as to age, health, earning power and general station in life, the jury could determine what would have been reasonable living expenses under the circumstances. Although the proof as to cost of mainte-

nance and of contributions was not of the best, we think, under the circumstances, it was sufficient. See and cf. Pennsylvania R. Co. v. Zebe, 1858, 33 Pa. 318, at page 327, 330; Illinois Central Railroad Co. v. Barron, 1866, 5 Wall. 90, at page 105, 72 U.S. 90, at page 105, 18 L.Ed. 591. Much is still left to the good sense and sound discretion of the jury. Patton v. Baltimore & O. R. Co., supra, 120 F.Supp. at pages 665, 667; Ashcraft v. C. G. Hussey & Co., 1948, 359 Pa. 129, at pages 132, 133, 58 A.2d 170, at page 172, "Our law only requires that a reasonable quantity of information must be supplied by plaintiff so that the jury may fairly estimate the amount of damages from the evidence."

■■ In estimating the likely earnings of decedent a factor to be considered is that earning power naturally decreases as life approaches its end. Murray v. Philadelphia Transportation Co., supra, 359 Pa. at page 74, 58 A.2d 323 (footnote 6). Pointing to the decedent's industry, ambition, desire to learn evidenced by his good habits and attendance at night school, plaintiff argues that it is reasonable to assume that his wages would have increased in the future. The measurement of future earnings is not a matter of exact formula but of judgment taking into consideration all factors entering into the likelihood of his career had he lived. Lindh v. Protective Motor Service Co.,

---

29. See and cf. Annotation, 14 A.L.R.2d 485, at page 519, "There is some uncertainty as to the true rule in Pennsylvania." Peters v. Bessemer & Lake Erie R. Co., 225 Pa. 307, at page 311, 74 A. 61, at page 62, seventeen year old decedent, lack of evidence of "boarding and clothing", "some proof of the probable cost of maintenance * * * is indispensable"; Kost v. Ashland Borough, 1912, 236 Pa. 164, at page 169–170, 84 A. 691; Walker v. Perkins, 1935, 319 Pa. 469, at page 470, 181 A. 511; Campbell v. City of Philadelphia, 1916, 252 Pa. 387, at page 390, 97 A. 456. Speaking of proof of earning capacity, "proof" would be required in the case of an adult, but we have never extended the rule so as to require such evidence in the case of a young child.

See Gentile v. Philadelphia & Reading Ry., 1922, 274 Pa. 335, at page 339, 118 A. 223; DeSantis v. Maddalon, 1944, 348 Pa. 296, at page 299, 35 A.2d 72, where award not excessive.

30. See Pennsylvania Bar Quarterly, October 1954, Vol. 26, p. 26 at pages 31, 34, as to items included and possible variables as to the future and difficulty of proof thereof. Id., Vol. 25, April 1954, 284 at pages 287, 289, clothing, food, shelter, entertainment, hospital, medical expenses and the like. Id., at page 290, "The problems inherent in determining the question of life expectancy, future loss of earning power and probable cost of future maintenance are ones peculiarly to be left to the sound judgment and discretion of the jury."

Inc., 1933, 310 Pa. 1, at page 6, 164 A. 605. In view of the evidence as to the likelihood of advancement or increase in earnings, see 16 Am.Jur. § 213, only a modest allowance would be warranted in that regard.

■ After determining the amount of damages to which plaintiff is entitled over the years the payment thereof must be anticipated and capitalized, (Leonard v. Baltimore & O. R. Co., 1917, 259 Pa. 51, at page 58, 102 A. 279,) "at simple interest at the legal rate". Murray v. Philadelphia Transportation Co., supra, 359 Pa. at page 74, 58 A.2d at page 325 (footnote 7). "A jury must compute damages according to law * * * when passing upon the question of future damages they can allow, as the present worth, such sum only as put at simple interest will, with the accumulations of interest, amount to such damages at the time or times * * * when the jury find from the evidence they will be sustained. Moreover, the interest must be computed at the lawful rate of 6 per cent. See 17 Corpus Juris 906." Windle v. Davis, 275 Pa. 23, at page 29, 118 A. 503, at page 505. While

Mars v. Meadville Tel. Co., supra, 344 Pa. at page 33, 23 A.2d 856, and Thirkell v. Equitable Gas Co., 307 Pa. 377, at page 382, 161 A. 313, assumed without discussion a five per cent rate in making calculations, and suggestions have been made that a lesser rate would be more just and equitable, see dissent Mr. Justice Stern, Murray v. Philadelphia Transportation Co., supra, 359 Pa. at page 79, 58 A.2d 323 (footnote 2), and comment Marsh, J., in Patton v. Baltimore & O. R. Co., supra, 120 F.Supp. at page 666 (footnote 11), and of Mr. Justice Pitney in Chesapeake & O. R. Co. v. Kelly, supra, 241 U. S. at page 490, 36 S.Ct. at page 632, 60 L.Ed. 1117; [31] Restatement Law of Torts, § 924 (d),[32] the words of Murray v. Philadelphia Transportation Co., supra, and of Windle v. Davis, supra, are peremptory and our duty under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and its progeny, is to follow. " * * * the question of the proper measure of damages is inseparably connected with the right of action * * *." Chesapeake & O. R. Co. v. Kelly, supra, 241 U.S. at page 491, 36 S.Ct. 630, at

---

31. "* * * not mean * * * discount should be * * * 'legal rate' of interest; that is, the rate limited by law, beyond which interest is prohibited. It may be that such rates are not obtainable upon investments on safe securities * * * without the exercise of financial experience and skill in the administration of the fund; * * * compensation should be awarded upon a basis that does not call upon the beneficiaries to exercise such skill, for where this is necessarily employed, the interest return is in part earned by the investor rather than by the investment. This * * * is a matter that ordinarily may be adjudged by scaling the rate of interest to be adopted in computing the present value of the future benefits; * * * common knowledge * * * best and safest investments, and those which require the least care, yield only a moderate return."

32. "In ascertaining the present worth of the future loss of earnings, that is, in discounting the recovery because future losses are paid for in advance, the rate of discount is based upon the current re-

turn upon long-term investments if the prospective losses are long continued." Restatement, Torts, § 924(d). See Sabine Towing Co. v. Brennan, 5 Cir., 1936, 85 F.2d 478 at page 484. Courts are not bound to adopt the highest or lowest rate; here considered six per cent reasonable. Snyder v. United States, 1953, D.C.Md., 118 F.Supp. 585, at page 589, a federal tort claim case, three and one-half per cent was used. See Id., 118 F.Supp. at page 590, to the effect that the United States Government uses a three and one-half per cent rate in computing the present value of life and remainder interests for estate and gift tax purposes. Poindexter v. Groves, D.C., 103 F.Supp. 657, at page 659, three to four per cent.

The Pennsylvania cases, cf. Milyak v. Philadelphia Rural Transit Co., 1930, 300 Pa. 457, at page 460, 150 A. 622, have not adopted as a standard of measuring awards the decreased value of the dollar. Cf. Snyder v. United States, supra, 118 F.Supp. at page 590, and 14 A.L.R.2d 626.

page 632, Gulf, C. & S. F. R. Co. v. Moser, 275 U.S. 133, at pages 135, 136, 48 S.Ct. 49, 72 L.Ed. 200.

■ We know of no reason for excluding the subsistence payments as part of the regular income of the decedent for the time in question. See and cf. Lynch v. United States, 1934, 292 U.S. 571, at page 577, 54 S.Ct. 840, 78 L.Ed. 1434.

■ Considering all factors presented by the evidence the jury could determine the life expectancy of the decedent and of the plaintiff and the pecuniary loss for which damages were to be awarded. It is not a mere matter of mathematical calculation. McCaffrey v. Schwartz, supra, 285 Pa. at page 571, 132 A. 810. We are aware of the difficulty involved where a jury attempts to calculate the present worth of an award of damages. In some jurisdictions expert witnesses are called and standard interest, annuity and present worth tables received for use by the jury; see, e. g., Vicksburg & Meridian R. Co. v. Putnam, supra, 118 U.S. at page 554, 7 S.Ct. 1, 30 L.Ed. 257; their use is however not permitted by a jury in Pennsylvania in cases of this kind. McCaffrey v. Schwartz, supra, 285 Pa. at page 570, 132 A. 810; Kerrigan v. Pennsylvania R. Co., supra, 194 Pa. at page 106, 44 A. 1069. Such tables may however be used by the trial judge in considering a claim of excessiveness of the verdict. Thirkell v. Equitable Gas Co., supra, 307 Pa. at page 383, 161 A. 313; Mars v. Meadville Tel. Co., supra, 344 Pa. at page 33, 23 A.2d 856; Murray v. Philadelphia Transportation Co., supra, 359 Pa. at page 76, 58 A.2d 323; Johnson v. Baltimore & O. R. Co., supra, 120 F.Supp. at page 666 (footnote 11).

■ Ordinarily in these cases the damages must depend very much upon the good sense and sound, deliberate judgment of the jury upon all the facts and circumstances of the particular case. Illinois Central R. Co. v. Barron, 1866, 5 Wall. 90, 105, 72 U.S. 90, 105, 18 L.Ed. 591. Where there is any margin for a reasonable difference of opinion in the matter, the view of the court should yield to the verdict of the jury, rather than the contrary. Smith v. Pittsburgh & W. R. Co., C.C.Ohio, 1898, 90 F. 783, at page 788. However, the discretion of the jury as to the amount of damages to be awarded, while very wide, is not an arbitrary or unlimited discretion, but must be exercised reasonably, intelligently, and in harmony with the testimony before it and, we add, with the instructions of the court. See our opinion in Fornwalt v. Reading Co., D.C.E.D.Pa., 79 F.Supp. 921, at page 923; Patton v. Baltimore & O. R. Co., supra, 120 F. Supp. at pages 666, 667; 15 Am.Jur. Damages, § 366, p. 804.

■ Wages and subsistence payments up to the time of trial and, in view of the short period of time involved, the remaining subsistence payments need not be reduced to their present worth. First Nat'l Bank in Greensburg v. M. & G. Convoy, Inc., supra, D.C., 102 F.Supp. 494, at page 496.

For purposes of calculation we have assumed that the cost of maintenance would be a minimum of about $75 per month, the monthly salary $174.44, with a possibility of a modest increase during decedent's life expectancy, from the date of trial, of thirty-six years.

■ Applying these tables to the facts in this case, it is evident that the jury either misunderstood or did not correctly apply the instructions of the court in arriving at the net amount of their award in each action. See Mars v. Meadville Tel. Co., supra, 344 Pa. at page 34, 23 A.2d 856; McCaffrey v. Schwartz, supra, 285 Pa. at page 568, 132 A. 810.

In the interests of justice the court does not feel compelled to grant a new trial unconditionally. Plaintiff will however be required to remit in the death action all monies awarded under the verdict in excess of $8,913.23, and in the survival action all monies awarded under the verdict in excess of $20,797.52. If plaintiff fails to file a stipulation to that effect within twenty days a new trial will be awarded.